Filed 6/24/13  P. v. Dickerson CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>TYRELL D. DICKERSON,<br><br>    Defendant and Appellant. | F063809<br><br>(Super. Ct. No. BF137473B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Michael E. Dellostritto and Kenneth C. Twisselman II, Judges.

Julia J. Spikes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

On appeal, defendant Tyrell D. Dickerson asks this court to review the material disclosed at the in camera hearing following his *Pitchess*[1] motion. Next, defendant contends the evidence is insufficient to support his conviction for burglary. Additionally, defendant maintains his due process rights were violated when the trial court instructed the jury with CALJIC No. 2.15. Lastly, defendant asserts that the October 1, 2011, amendments to Penal Code[2] section 4019 must be applied to his case. We disagree with defendant and affirm the judgment in its entirety.

## PROCEDURAL HISTORY

By amended information, defendant and his codefendant Jovon Jackson were charged with burglary (§ 460, subd. (a); count 1) and receiving stolen property (§ 496, subd. (a); count 2). Each count further alleged defendant had a prior strike conviction within the meaning of section 667, subdivisions (c) through (j), and he had served a prior prison term within the meaning of section 667.5. The burglary count also alleged defendant had suffered a prior serious felony conviction within the meaning of section 667, subdivision (a). Defendant subsequently pled not guilty to all counts and denied all allegations.

On August 8, 2011, defendant filed a *Pitchess* motion. The motion was opposed by the City of Bakersfield and Officer Peter Beagley. On September 2, 2011, the trial court heard and granted defendant's motion. Following proceedings in camera, it ordered certain information be disclosed to defense counsel.

Jury trial commenced September 26, 2011. On September 28, 2011, the jury found defendant guilty of felony burglary and the court dismissed count 2 on its own motion as a lesser included offense. That same date, following a court trial, the further allegations were found true.

---

[1]*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

[2]All further statutory references are to the Penal Code unless otherwise indicated.

Thereafter, on October 27, 2011, defendant was sentenced to a total of 13 years in state prison.

## FACTS

On the evening of July 1, 2011, at about 7:15 p.m., Michael George and his girlfriend Katy Munoz left their residence to have dinner at a local restaurant. When they left the home, both the front and the sliding glass doors were locked.

Shortly after returning home between 9:45 and 10:00 p.m., the couple realized certain belongings were missing and the home had been ransacked. A Samsung 50" plasma television, a PlayStation 3 video game console and various video games, two laptop computers in accessory bags, a red duffel bag, and Munoz's costume jewelry and jewelry box were missing. Although the front door was locked when they returned home, the couple noticed the sliding glass door was slightly ajar.

Police officers responded to the couple's report of a break-in. They dusted for fingerprints and noted pry marks on the front door. Officer Juan Orozco testified that although the scene was processed for fingerprints, no usable prints were obtained. While on scene, Orozco was contacted by other officers who indicated the property taken from the George/Munoz residence may have been recovered.

At about 9:00 p.m. that same evening, Officer Peter Beagley and his partner conducted a traffic stop at Madison and Watts Avenues in Bakersfield. This location was approximately eight to ten miles from the victims' residence, or 20 to 25 minutes' driving time. When the officers stopped the vehicle in which defendant was a passenger, several electronic items and accessories could be seen in the vehicle's backseat. None of the items appeared to be brand new. After a vehicle search, the officers located laptop computers, a PlayStation 3 video game console, a red duffel bag containing a jewelry box, and DVD's and video games strewn about in the backseat. In the vehicle's trunk was a large Samsung flat-screen television. A second search of the trunk revealed a screwdriver with a bent tip; it also appeared to contain brown paint residue.

3.

George and Munoz subsequently identified the items found in that vehicle as the possessions missing from their home. They also testified they did not know defendant and that he did not have permission to be in their home. All items were returned that same evening. The television was heavy; two persons were required to lift it.

For the defense, criminalist Jeanne Spencer testified she examined the screwdriver for trace evidence or evidence of a paint transfer to compare to samples provided of the victims' front door. None were found on the screwdriver. On cross-examination, she testified such a result did not mean the screwdriver could not have been used in the crime. Rather, it meant only that no trace evidence remained on the screwdriver had it been used in the crime.

## DISCUSSION

### I. Review of Materials Following *Pitchess* Motion

Defendant asks this court to review the materials disclosed in camera in response to his *Pitchess* motion. Defendant contends the trial court's September 2, 2011, order is ambiguous and that it is not clear the "court itself made the determination of what was 'discoverable.'"

We begin with the well-settled standards for disclosure of confidential personnel records pursuant to *Pitchess*, which established that "a criminal defendant could 'compel discovery' of certain relevant information in the personnel files of police officers by making 'general allegations which establish some cause for discovery' of that information and by showing how it would support a defense to the charge against him." (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1018–1019 (*Warrick*); see §§ 832.7, 832.8; Evid. Code, §§ 1043–1045.)

> "… To initiate discovery, the defendant must file a motion supported by affidavits showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue. [Citation.] This two-part showing of good cause is a 'relatively low threshold for discovery.' [Citation.]

"If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only that information falling within the statutorily defined standards of relevance. [Citations.] The trial court may not disclose complaints more than five years old, the 'conclusions of any officer' who investigates a citizen complaint of police misconduct, or facts 'so remote as to make [their] disclosure of little or no practical benefit.' [Citations.] Typically, the trial court discloses only the names, addresses, and telephone numbers of individuals who have witnessed, or have previously filed complaints about, similar misconduct by the officer. [Citation.] That practice 'imposes a further safeguard to protect officer privacy where the relevance of the information sought is minimal and the officer's privacy concerns are substantial.' [Citation.]" (*Warrick*, *supra*, 35 Cal.4th at p. 1019.)

"[T]he standard governing discovery of personnel records is not whether the information discovered is ultimately admissible at trial. '[Evidence Code s]ection 1043 has no such precondition. Quite to the contrary, the Legislature has determined that the moving party must show only that the personnel records are *material* to the subject matter in the pending litigation.' [Citation.]" (*Larry E. v. Superior Court* (1987) 194 Cal.App.3d 25, 31–32.) When there is "discoverable information in the officer's file," the defendant should be "given an opportunity to determine if the information would have led to any relevant, admissible evidence that he could have presented at trial. [Citation.]" (*People v. Hustead* (1999) 74 Cal.App.4th 410, 419.)

When the court finds good cause and conducts an in camera review pursuant to *Pitchess*, it must make a record that will permit future appellate review. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1230; *People v. Guevara* (2007) 148 Cal.App.4th 62, 69.) The court may preserve the record either by copying the documents and placing them in a confidential file, preparing a sealed list of the documents it reviewed, or "simply state for the record what documents it examined" and seal that transcript. (*Mooc*, *supra*, at p. 1229.)

The trial court has broad discretion in ruling on both the good cause and disclosure components of a *Pitchess* motion. Its ruling will not be disturbed absent an abuse of that discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039; *People v. Hughes*

(2002) 27 Cal.4th 287, 330; *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086.)

On appeal, we are required to review the "record of the documents examined by the trial court" and to determine whether the trial court abused its discretion in refusing to disclose the contents of the officer's personnel records pursuant to *Pitchess*. (*People v. Mooc*, *supra*, 26 Cal.4th at p. 1229; see *People v. Hughes*, *supra*, 27 Cal.4th at p. 330.) A defendant is entitled to "meaningful appellate review" of the confidential files that were before the superior court when it denied the *Pitchess* motion for disclosure. (*Mooc*, *supra*, at p. 1228.)

If the appellate court determines that the superior court abused its discretion by denying disclosure of confidential records it had reviewed, reversal is not required unless the error was prejudicial under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (See *People v. Gaines* (2009) 46 Cal.4th 172, 182–183; *People v. Samuels* (2005) 36 Cal.4th 96, 110.) The determination of whether the court's error was prejudicial "involves an assessment or weighing of the persuasive value of the evidence that was presented and that which should have been presented. [Citations.]" (*Gaines*, *supra*, at p. 182.) There must be a reasonable probability of a different outcome if the potential impeachment evidence had been disclosed. (*Ibid*.)

Here, defendant filed his motion on August 8, 2011, seeking personnel records regarding Bakersfield police officer Peter Beagley. More particularly, defendant sought reports, complaints or investigation documents pertaining to "[f]alsifying information" and "[d]ishonesty as [to] the reporting of investigations." The City of Bakersfield and Officer Beagley opposed the motion. On September 2, 2011, the trial court granted the motion and proceeded to hold an in camera hearing. The minute order reads, in pertinent part: "Cause proceeds with in camera hearing. [¶] The court makes the following findings and/or orders: [¶] Court orders discoverable items, if any, are to be disclosed and provided to the defense within ten days. Protective order granted." (Some capitalization omitted.)

We have examined Officer Beagley's personnel records and all materials provided during the in camera proceedings. The trial court preserved the record in a sealed transcript by stating for the record the documents it examined. (*People v. Mooc*, *supra*, 26 Cal.4th at p. 1229.) Following its review, the trial court ordered the release of certain relevant information to defense counsel, subject to a protective order. Otherwise, it determined that the materials reviewed in camera were not discoverable. Following our review, we conclude that the trial court did not abuse its discretion.

## II.     Sufficiency of the Evidence

Defendant contends the evidence was insufficient to support his conviction for burglary. More specifically, he contends there was insufficient evidence he had conscious possession of the stolen property.

In assessing a claim of insufficiency of the evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—evidence that is reasonable, credible, and of solid value upon which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. It is the jury, not the appellate court, which must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

In reviewing a challenge to the sufficiency of the evidence, appellate courts do not determine the facts. We examine the record as a whole in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053, overruled on other grounds in *People v. Rundle* (2008) 43 Cal.4th 76, 151.) If

the verdict is supported by substantial evidence, a reviewing court must accord due deference to the trier of fact and not substitute its evaluation of a witness's credibility for that of the fact finder. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient for a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

An appellate court must accept logical inferences that the jury might have drawn from circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) Before the judgment of the trial court can be set aside for insufficiency of the evidence, "it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the jury." (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429; see *People v. Conners* (2008) 168 Cal.App.4th 443, 453.)

Here, defendant argues the evidence in support of his burglary conviction is insufficient because the People failed to present any evidence that he possessed the items, either actually or constructively. We disagree.

Defendant relies upon *People v. Zyduck* (1969) 270 Cal.App.2d 334 in support of his argument. Zyduck was the front seat passenger in a vehicle stopped on a highway in a logging area. The court held that the mere presence of a stolen chainsaw in the backseat did not support Zyduck's conviction of receiving stolen property. That court held that "[d]ominion and control are essentials of possession, and they cannot be inferred from mere presence or access. Something more must be shown to support inferring of these elements. Of course, the necessary additional circumstances may, in some fact contexts, be rather slight. [Citations.]" (*Id.* at p. 336.)

In this case, unlike *People v. Zyduck*, defendant was not convicted based upon his mere presence as a passenger in the vehicle, nor on the basis that Jackson's vehicle contained a heavy object. Rather, there exists other evidence to support the inference of possession.

The George/Munoz residence was burgled after 7:15 p.m. on July 1, 2011. Less than two hours later, and about 25 minutes driving time away, defendant was a passenger in a vehicle with Jackson, the only other occupant. The vehicle had been stopped by police and found to contain the victims' possessions. One of those possessions—a 50-inch Samsung plasma television—could not be carried by a single individual. The evidence adduced at trial revealed that due to the bulk and weight of the television, two persons were needed to lift and carry it. Here, the fact defendant was in the presence of recently stolen property shortly after the burglary must have occurred, coupled with the fact one of the stolen items could not be lifted and carried by a single individual and there were only two occupants in the vehicle, is the "something more" that supports an inference of possession. The jury logically inferred that defendant was aware the items in the backseat and trunk of Jackson's car were stolen. It is also logical to infer from that same evidence that defendant burgled the victims' home.

We disagree with defendant that his case is similar to the facts of *People v. Smith* (1954) 128 Cal.App.2d 706. In *Smith*, more than 24 hours following the burglary of a jewelry store in Oakland, the defendant and two other men were playing pool at a pool hall in Merced. One of the other men left briefly and returned with a brown paper bag. The contents of the bag—watches and rings—were emptied onto a pool table and the other two men asked patrons whether they were interested in purchasing the items. Smith was nearby, dancing to music from the juke box. (*Id.* at p. 707.) After the three men left the pool hall, they were pulled over by law enforcement. Questioned separately, all three denied ever having seen the jewelry found in the vehicle. (*Id.* at pp. 707-708.)

The appellate court reversed Smith's conviction for possession of stolen property, finding the evidence of possession was sufficient as to the other two men, but insufficient as to Smith. (*People v. Smith*, *supra*, 128 Cal.App.2d at pp. 708-709.) Defendant likens himself to Smith, indicating that he "was associating with someone who had possibly just burgled an apartment," and that while that association "may be a very suspicious circumstance," it is not evidence he possessed stolen property. As detailed above

9.

however, unlike *Smith*, here there is evidence to support the jury's finding that defendant possessed stolen property. Unlike *Smith*, more than 24 hours and 130 miles had not passed between the time of the burglary and the time in which Smith was found in the presence of the stolen property. Rather, here, defendant was found in Jackson's vehicle within two hours of the burglary and only eight to ten miles away from the scene of the burglary. Additionally, there was evidence that one of the items taken during the burglary could not be handled by a single individual. These facts distinguish this matter from *Smith*.

Moreover, defendant argues, without any citation to legal authority, that because CALJIC No. 2.15 "has a temporal component factored into it by virtue of using the phrase 'recently stolen,'" the "prosecutor cannot use that same circumstantial evidence as corroborating evidence." We have not identified any authority in support of defendant's assertion. We note, however, that "'the attributes of the possession—time, place, and manner—may furnish the additional quantum of evidence'" needed to establish possession. (*People v. Reyes* (1997) 52 Cal.App.4th 975, 985.) Here, the attributes of possession—time (within two hours of the burglary), place (eight to ten miles from burgled residence), and manner (item taken could not be carried by single individual)—provided proper corroboration.

We conclude this record contains additional facts beyond defendant's mere presence as a passenger in a vehicle. Those additional facts gave rise to a logical inference that defendant had possession of the stolen property and had committed the crime of burglary.

## III.    CALJIC No. 2.15

Defendant maintains the trial court erred in instructing the jury with CALJIC No. 2.15[3] because, as a matter of law, there was no evidence he possessed stolen

---

[3]The jury was instructed as follows:

"If you find that a defendant was in conscious possession of recently stolen property, the fact of that possession is not, by itself, sufficient to permit an inference that the defendant is

property. As we have already determined there was sufficient evidence to establish that defendant had possession of stolen property, we find no error.

The general rule is that the trial court must instruct on the "principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' [Citation.]" (*People v. Saddler* (1979) 24 Cal.3d 671, 681.) It is well settled that a jury may infer guilt of a theft-related crime from the fact a defendant is in possession of recently stolen property, when coupled with slight corroboration by other inculpatory circumstances that tend to show guilt. (*People v. Barker* (2001) 91 Cal.App.4th 1166, 1173.)

The California Supreme Court has concluded CALJIC No. 2.15 may properly be given regarding charges of robbery, burglary, and other theft-related offenses in cases in which there is sufficient evidence to support findings the defendants possessed recently stolen property. (*People v. Prieto* (2003) 30 Cal.4th 226, 249 ["[w]e have approved the use of CALJIC No. 2.15 with respect to theft offenses"]; *People v. Smithey* (1999) 20 Cal.4th 936, 976–977; *People v. Holt* (1997) 15 Cal.4th 619, 677.)

As previously discussed, although defendant asserts he was merely a passenger in the vehicle and thus could not be found to have possessed stolen property, we have determined the evidence logically suggests otherwise.

In this case, the trial court instructed on a principle of law relevant to an issue raised—possession of recently stolen goods. Here, over and above defendant's proximity to the victims' property at the time of the stop, there was evidence in the form of time,

guilty of the crimes charged in counts 1 and 2. Before guilt may be inferred, there must be corroborating evidence tending to prove defendant's guilt. However, this corroborating evidence need only be slight and need not, by itself, be sufficient to warrant an inference of guilt.

"As corroboration, you may consider the attributes of possession, time, place, and manner that the defendant had an opportunity to commit the crime charged, the defendant's conduct, and any other evidence which tends to connect the defendant with the crime charged."

place, and manner that spoke to defendant's opportunity to commit burglary and have knowing possession of recently stolen goods. The instruction was clearly relevant to the issues raised at trial. (*People v. Saddler*, *supra*, 24 Cal.3d at p. 681.)

Defendant argues the jury may have been confused by the instructions given by the trial court but fails to cite to the record to support this possibility. He claims "the jury might have assumed that [his] mere presence in the vehicle with the stolen items constituted possession" and that such a misconception was not remedied by the instructions given. We cannot agree with defendant's assertion as it is based on rank speculation. Defendant points to nothing in the record to support such an assumption.

In sum, the trial court did not err by instructing the jury in the language of CALJIC No. 2.15. The instruction explained to the jury that it could not find defendant guilty of burglary unless it first found that defendant "was in conscious possession of recently stolen property" and then found additional corroborating evidence to infer guilt.

## IV.    Section 4019 Credits

Finally, defendant contends he should be awarded additional presentence credits based upon the amendments to section 4019 that became operative on October 1, 2011. He argues failure to award retroactive credit constitutes a violation of equal protection principles. He further argues he should receive enhanced credits for the actual time spent in custody after October 1, 2011, claiming the statutory language is ambiguous. This court has previously addressed, and rejected, the specific arguments raised by defendant in our decision in *People v. Ellis* (2012) 207 Cal.App.4th 1546 (*Ellis*). We reject them again here. (See also *People v. Brown* (2012) 54 Cal.4th 314; *People v. Kennedy* (2012) 209 Cal.App.4th 385.)

Subdivision (h) of section 4019 specifically states the increased conduct credit amendment applies prospectively only. In *Ellis*, we concluded the intent of the Legislature "was to have the enhanced rate apply *only* to those defendants who committed their crimes on or after October 1, 2011. [Citation.]" (*Ellis*, *supra*, 207

Cal.App.4th at p. 1553.) It is undisputed that defendant committed his crime prior to October 1, 2011, or, on July 1, 2011.

"The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.]" (*People v. Brown*, *supra*, 54 Cal.4th at p. 328.) Reviewing courts determine whether groups are "similarly situated" in the specific context of the law being challenged, not whether the groups are "similarly situated" in all respects. (*Ellis*, *supra*, 207 Cal.App.4th at p. 1551.)

In *People v. Brown*, the California Supreme Court noted that the purpose of section 4019 is to authorize incentives for good behavior.[4] This goal is not served "'by rewarding prisoners who served time before the incentives took effect and thus could not have modified their behavior in response.…'" (*Ellis*, *supra*, 207 Cal.App.4th at p. 1551, quoting *People v. Brown*, *supra*, 54 Cal.4th at pp. 328–329.) Therefore, prisoners who served time before and after amendments to section 4019 are not "similarly situated" for equal protection purposes. (*Ellis*, *supra*, at p. 1551.) Because defendant fails to show section 4019 treats "similarly situated" groups unequally, he asserts no cognizable equal protection claim.

To the degree defendant argues his right to equal protection was violated by the denial of conduct credits for the presentence time he served between October 1 and October 27, 2011, the court *in People v. Rajanayagam* (2012) 211 Cal.App.4th 42 rejected a similar claim. Although the *Rajanayagam* court found that defendants who served time in jail on or after October 1, 2011, regardless of the date they committed their offenses were indeed similarly situated for purposes of equal protection, it nevertheless concluded there was no equal protection violation as there was a rational basis for the legislative classification. (*Id*. at pp. 53-56.) As the court explained, the legislative

---

[4]Although *People v. Brown* dealt with a different amendment to section 4019, we have applied its reasoning to the October 1, 2011, amendments to section 4019 that are at issue here. (See *Ellis*, *supra*, 207 Cal.App.4th at pp. 1551–1552.)

purpose behind the amendment at issue is "'to reduce recidivism and improve public safety, while at the same time reducing corrections and related criminal justice spending.'" (*Id*. at p. 55.) The court concluded "the classification in question does bear a rational relationship to cost savings." (*Ibid*.) Therefore, the defendant's equal protection rights were not violated. (*Id*. at p. 56.) Even assuming we were to find defendant is similarly situated with persons who do benefit from the legislation, we agree with the court in *Rajanayagam* that there is a rational basis for the classification. No equal protection violation occurred.

Likewise, we reject defendant's argument that he is entitled to enhanced conduct credits for the period between October 1, 2011, and the date he was subsequently sentenced on the ground the wording of the statute is ambiguous. As we explained in *Ellis*, the statutory language on this point is not ambiguous. (*Ellis*, *supra*, 207 Cal.App.4th at pp. 1552-1553.) Thus, for the reasons stated in *Ellis*, we reject defendant's claim.

The trial court properly awarded defendant a total of 58 days of custody credit and 119 days of actual custody credit, for a total of 177 days.

## DISPOSITION

The judgment is affirmed.

_____

PEÑA, J.

WE CONCUR:


_____

KANE, Acting P.J.


_____

FRANSON, J.

14.