[No. D043033. Fourth Dist., Div. One. Apr. 20, 2004.]

WILLIAM HAGGERTY, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
LUIS GUINDAZOLA, Real Party in Interest.

**COUNSEL**

John J. Sansone, County Counsel, and Kevin G. Kennedy, Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Diamond & Schmidt, William L. Schmidt; Law Offices of Charles E. Ruben & Associates and Charles E. Ruben for Real Party in Interest.

OPINION

**HALLER, J.**—Luis Guindazola brought a civil action against San Diego County Sheriff's Deputy William Haggerty, alleging that Haggerty used excessive physical force against him while Guindazola was incarcerated in a county jail. After two *Pitchess*[1] discovery requests and two in camera hearings, the superior court ordered the San Diego County Sheriff's Department (Department) to disclose its report concerning its investigation of the incident underlying Guindazola's civil complaint. Haggerty challenges this order in his writ petition.

We conclude the court erred in ordering the Department's internal affairs report produced without first redacting the portions of the report reflecting the investigating officer's analysis and conclusions. But we reject Haggerty's contentions that the court abused its discretion in ordering the remainder of the report disclosed. Accordingly, we grant Haggerty's writ petition, and direct the superior court to order disclosure of the internal affairs report after redacting the portions of the report reflecting the investigating officer's analysis and conclusions.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Complaint's Factual Allegations*

Guindazola's amended complaint against Haggerty alleges the following. While Guindazola was detained at a county detention facility, Haggerty instructed Guindazola to remove a light cover from a light in his cell. After Guindazola complied with this request, Haggerty told Guindazola to remove a calendar from his wall. When Guindazola stated that the calendar was not interfering with the lights, Haggerty demanded that he turn over the calendar and grabbed Guindazola's leg. Haggerty began "beating" Guindazola by punching him in the ribs.

Haggerty and another deputy sheriff (Deputy McCormick) then took Guindazola, who was clad only in his underwear, to a small room where Haggerty yelled at Guindazola and then rushed toward Guindazola, placing all of his weight on Guindazola's bare foot, causing the foot to bleed. Haggerty punched Guindazola in the mouth, which caused Guindazola to fall to the ground. Haggerty then beat Guindazola by punching, kicking, kneeing and poking Guindazola's body for several minutes. McCormick watched the incident, but did nothing to stop it. After several minutes, backup officers arrived in the room. Guindazola later learned that these officers responded

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

because one or more of the officers had seen the incident while monitoring the cameras from another location.

Guindazola complained to the Department, which conducted an internal investigation, the record of which is at issue here. Guindazola also filed a complaint with the Citizen's Law Enforcement Review Board (CLERB), which determined that Haggerty had violated departmental policy and used excessive force. Guindazola then filed a civil action against Haggerty and McCormick, alleging civil rights violations, assault, and battery. Guindazola did not name the county or the Department as a defendant.

## B. *Pitchess Motions*

After filing the civil action, Guindazola moved for the discovery of documents contained in Haggerty's personnel files, including "[t]he entire Internal Affairs investigation file" of the incident between Haggerty and Guindazola.[2] In support, Guindazola submitted his counsel's declaration, describing the facts alleged in the complaint and stating that the document "requests are not being made for an improper purpose, nor are they intended to harass the Defendants." Although counsel said she would be "concurrently" submitting a "Separate Statement of Relevancy," counsel never filed this document. But counsel did file a copy of the CLERB report, which stated that the Department's internal affairs division had conducted an investigation of Guindazola's internal complaint and determined there was "a sustained finding for a 'procedural violation.' " The CLERB report also stated that its finding that Haggerty had used excessive force was supported by the "confidential deputy statements and corroborating information from the Department. . . ."

In response to these document requests, Haggerty agreed to produce various items, but argued that with respect to the internal affairs investigation documents, Guindazola failed to make an adequate showing of good cause to justify an in camera examination. Haggerty additionally argued that a copy of the internal affairs investigation file and related documents were not discoverable without a specific showing of "necessity," which was not met because "Guindazola's moving papers do not contend that he cannot readily otherwise obtain the information contained in the records through other discovery."

The superior court found good cause existed to conduct an in camera inspection of the documents relating to the internal affairs investigation of the incident at issue in Guindazola's complaint and documents relating to any

---

[2] Although Guindazola also sought information from McCormick's personnel files, those requests are not at issue in this writ proceeding.

prior complaints of excessive force by Haggerty. At the in camera hearing, the Department produced the internal affairs file of the incident, which included a 23-page memorandum dated March 8, 2001, containing the investigating officer's factual summary, analysis, and conclusions regarding the Guindazola incident and containing witness statements made to the investigating officer in the internal affairs investigation (the "Internal Affairs report"). At the conclusion of the hearing, the court ordered that the Internal Affairs report would not be disclosed, but indicated that this ruling was tentative and that it would provide Guindazola's counsel the opportunity to present legal argument on the issue. The court further found there were no prior complaints concerning Haggerty's use of excessive force or violence and thus did not order the disclosure of any information regarding prior complaints.

The next month, Guindazola filed a second *Pitchess* motion seeking 20 additional categories of documents. The first five requests again sought documents relating to the Department's internal investigation of the incident. Guindazola also sought documents relating to Haggerty's transfer after the incident, prior complaints or incidents involving Haggerty, and Haggerty's job assignment orders. Guindazola's counsel submitted a supporting declaration, stating she was requesting internal affairs documents based on Haggerty's deposition testimony and her review of the documents produced by the Department in response to Guindazola's prior *Pitchess* motion.

In response to this second request, the court ordered the Department to again produce for an in camera inspection all documents relating to the internal affairs investigation of the Guindazola incident and documents relating to Haggerty's transfer after the incident. The court further ordered counsel to be prepared to discuss the legal issues regarding whether the Internal Affairs report was subject to disclosure.

After conducting the second in camera hearing and considering the parties' legal arguments, the court ordered the 23-page Internal Affairs report disclosed. The court found the report contained facts that were directly relevant to Guindazola's claims and included information that "could lead to the discovery of admissible evidence." The court rejected Haggerty's argument that Guindazola was entitled only to identifying information of the witnesses, stating this limited production would not necessarily provide Guindazola with the substance of the relevant information in the Internal Affairs report. The court further stated that "in balancing [Haggerty's] privacy interest in his personnel file against the need for disclosure, the scale tips in favor of disclosure under these circumstances."

The court later stayed its disclosure order pending the resolution of Haggerty's writ petition in this court.

## DISCUSSION

### I. *Statutory Overview*

■ A law enforcement agency is required to investigate complaints against its officers and retain records of the investigations for at least five years. (Pen. Code, § 832.5, subds. (a), (b).) These records of an internal investigation are considered "confidential" and part of an officer's personnel records. (Pen. Code, §§ 832.7, 832.5, subds. (b), (c).) The statutory scheme for obtaining these confidential personnel records in civil and criminal cases is contained in Evidence Code sections 1043 through 1047 and Penal Code sections 832.5, 832.7 and 832.8.[3] (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226 [114 Cal.Rptr.2d 482, 36 P.3d 21].) These code sections were enacted to codify the California Supreme Court decision in *Pitchess v. Superior Court, supra,* 11 Cal.3d 531, which permitted discovery of police officer files on a proper showing of materiality, relevance and necessity, and to curtail record shredding and discovery abuses that allegedly occurred in the wake of the *Pitchess* decision. (See *City of Los Angeles v. Superior Court* (2003) 111 Cal.App.4th 883, 889 [3 Cal.Rptr.3d 915].)

The *Pitchess* statutory scheme recognizes that evidence contained in a law enforcement officer's personnel file may be relevant in a lawsuit, but that the officer "has a strong privacy interest in his or her personnel records and that such records should not be disclosed unnecessarily." (*People v. Mooc, supra,* 26 Cal.4th at p. 1227.) To balance these competing interests, the Legislature "require[d] the intervention of a neutral trial judge, who examines the personnel records in camera . . . and orders disclosed to the defendant only those records that are found both relevant and otherwise in compliance with statutory limitations. In this manner, the Legislature has attempted to protect [a party's] right to a fair trial and the officer's interest in privacy to the fullest extent possible." (*Ibid.*; see *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 53 [19 Cal.Rptr.2d 73, 850 P.2d 621].) These statutes apply equally to civil and criminal discovery. (*City of Hemet v. Superior Court* (1995) 37 Cal.App.4th 1411, 1423–1424 [44 Cal.Rptr.2d 532].)

Under the statutory scheme, a party seeking discovery of a peace officer's personnel records must follow a two-step process. (*People v. Mooc, supra,* 26 Cal.4th at p. 1226.) First, the party must file a written motion describing the type of records sought, supported by "[a]ffidavits showing good cause for the discovery. . . , setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the

---

[3] All statutory references are to the Evidence Code unless otherwise specified.

records." (§ 1043, subd. (b)(3).) This initial burden is a "relatively relaxed standard[]." (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84 [260 Cal.Rptr. 520, 776 P.2d 222].) Information is material if it " 'will facilitate the ascertainment of the facts and a fair trial.' [Citation.]" (*Ibid.*; see *Brant v. Superior Court* (2003) 108 Cal.App.4th 100, 106 [132 Cal.Rptr.2d 783].) "[A] declaration by counsel on information and belief is sufficient to state facts to satisfy the 'materiality' component of that section." (*Abatti v. Superior Court* (2003) 112 Cal.App.4th 39, 51 [4 Cal.Rptr.3d 767].)

Second, if "the trial court concludes the defendant has fulfilled these prerequisites and made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion. . . . The trial court 'shall examine the information in chambers' (Evid. Code, § 1045, subd. (b)), 'out of the presence and hearing of all persons except the person authorized [to possess the records] and such other persons [the custodian of records] is willing to have present.' . . . Subject to statutory exceptions and limitations . . . the trial court should then disclose to the defendant 'such information [that] is relevant to the subject matter involved in the pending litigation.' [Citations.]" (*People v. Mooc, supra,* 26 Cal.4th at p. 1226; § 1045, subd. (a).)

■ Haggerty challenges the court's findings on both parts of the *Pitchess* determination—the good cause finding and the ultimate disclosure ruling. A trial court has broad discretion in ruling on each of these matters, and a reviewing court should reverse the court's determinations only on a showing that the court abused this discretion. (See *People v. Samayoa* (1997) 15 Cal.4th 795, 827 [64 Cal.Rptr.2d 400, 938 P.2d 2]; *People v. Gill* (1997) 60 Cal.App.4th 743, 749 [70 Cal.Rptr.2d 369].)

## II. *Good Cause Showing*

Haggerty first contends the declarations submitted by Guindazola's counsel were inadequate to show the Internal Affairs report was "material" to Guindazola's claims and therefore the court erred in conducting an in camera review of the Department's internal affairs file. Although the supporting declarations were minimal, Guindazola's counsel did summarize the facts alleged in the complaint showing Guindazola's claims involved Haggerty's use of excessive force against him, and counsel stated the discovery was not sought for an improper purpose. Counsel additionally provided the court with the CLERB report which found Haggerty used excessive force and stated this finding was based on its interviews of the sheriff's deputies and other information obtained from the Department. Further, the CLERB report indicated that the Department's internal affairs division had found Haggerty had committed a "procedural violation."

On this record, the court had a reasonable basis to conclude the internal investigation file of the incident at issue in the lawsuit could contain information that was material to the lawsuit. (See *Robinson v. Superior Court* (1978) 76 Cal.App.3d 968, 977 [143 Cal.Rptr. 328] [noting that the relevancy of an investigation of the incident that is the basis for the lawsuit is "self-evident"].) The materiality of requested information may be established by other pertinent documents read in conjunction with counsel's affidavit. (*Brant v. Superior Court, supra,* 108 Cal.App.4th at p. 105.) Although it certainly would have been better for counsel to provide a more specific articulation of the relevancy connection between the lawsuit and the internal investigation, the trial court could reasonably make the necessary inferences to find that the good cause showing was satisfied.

### III. *Disclosure Order*

■ Once a court conducts an in camera hearing, section 1045 governs the documents that may be disclosed. Section 1045 provides "Nothing in this article shall be construed to affect the right of access to records of complaints, or *investigations of complaints,* or discipline imposed as a result of those investigations, concerning an event or transaction in which the peace officer . . . participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties, provided that information is relevant to the subject matter involved in the pending litigation." (§ 1045, subd. (a), italics added.) This subdivision is "expansive." (*Fletcher v. Superior Court* (2002) 100 Cal.App.4th 386, 399 [123 Cal.Rptr.2d 99].) Relevant information under section 1045 is not limited to facts that may be admissible at trial, but may include facts that could lead to the discovery of admissible evidence. (See *People v. Memro* (1985) 38 Cal.3d 658, 681–682 [214 Cal.Rptr. 832, 700 P.2d 446]; *People v. Hustead* (1999) 74 Cal.App.4th 410, 423 [87 Cal.Rptr.2d 875].)

These broad rules permitting discovery of complaint and investigation information are qualified by three specific exceptions contained in section 1045, subdivision (b). Section 1045, subdivision (b) provides that "[i]n determining relevance, the court shall . . . exclude from disclosure: [¶] (1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit." Additionally, section 1045, subdivision (c) states that "In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the

information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records."

■ If the court determines the requested personnel records are relevant within the meaning of section 1045, subdivision (a), and do not fall within the exceptions set forth in section 1045, subdivisions (b) or (c), the court should generally order their production subject to an order "that the records disclosed . . . may not be used for any purpose other than a court proceeding pursuant to applicable law." (§ 1045, subds. (d), (e).)

## A. Relevancy of the Internal Affairs Report

■ In this case, the trial court conducted a detailed in camera inspection of the internal affairs file and found the documents contained in the file were relevant to the issues in Guindazola's lawsuit. On our independent review of the sealed documents, we agree with this conclusion, with the exception of the portions of the Internal Affairs report in which the investigating officer states his analysis and conclusions regarding the incident. There is nothing contained in the officer's subjective impressions of the facts found during the investigation that would be admissible at trial or lead to the discovery of admissible evidence. Significantly, neither the trial court, nor Guindazola, articulated any possible relevance of the investigating officer's subjective analysis and conclusions to the issues raised in Guindazola's lawsuit. Although the trial court noted that in a civil case the investigating officer's conclusions "may" have many potential applications, the court did not state or identify any particular relevance of such evidence *in this case.* The analysis of relevancy in the *Pitchess* context must be on a case-by-case basis, rather than on a one-size-fits-all approach. The court thus should have redacted these portions of the report before ordering the report disclosed to Guindazola.

■ We note our conclusion would have been statutorily mandated if this was a criminal case because section 1045, subdivision (b)(2) expressly provides that a court "shall" exclude from disclosure "*[i]n any criminal proceeding* the conclusions of any officer investigating a complaint. . . ." (Italics added; see *City of San Jose v. Superior Court, supra,* 5 Cal.4th at pp. 53–54.) But this does not mean that in all civil proceedings an investigating officer's conclusions are automatically discoverable. Instead, a court must still undertake the threshold relevance analysis set forth in section 1045, subdivision (a). Further, section 1045, subdivision (b)(3) states that a court "shall" exclude from disclosure all facts that "are so remote as to make disclosure of little or no practical benefit." Where, as here, neither the trial court nor the moving party has articulated how this information would be of meaningful

benefit in the litigation, this subdivision mandates exclusion of the officer's untested preliminary conclusions. (§ 1045, subd. (b)(3).)

We thus remand the case to the trial court to redact those portions of the Internal Affairs report reflecting solely the investigating officer's "conclusions," defined to mean the "thought processes of, and factual inferences and deductions drawn by, an officer investigating a complaint, concerning such matters as the credibility of witnesses or the significance, strength, or lack of evidence." (*City of San Jose v. Superior Court, supra,* 5 Cal.4th at p. 55.)

### B. *Production of Internal Affairs Report Rather Than Witness Identification Information*

With respect to the remaining portions of the Internal Affairs report, Haggerty argues Guindazola was not entitled to obtain a copy of the report because he did not establish that the disclosure of witness identifying information would be insufficient to permit Guindazola to conduct his own discovery.

This argument is unavailing because the trial court specifically found the disclosure of the witness identities would *not* provide Guindazola with the substance of the relevant information found in the report. This finding was fully supported by the record. The facts gleaned from the internal investigation were directly relevant to the matters at issue in the lawsuit, and at trial Guindazola will have the burden of proof regarding the elements of his claim. Moreover, the requested discovery was important, not only for determining the events that occurred during the incident, but also for Guindazola's counsel to prepare effective cross-examination of defense witnesses, including to impeach witnesses whose testimony at trial differs from statements made to the investigating officers and/or to refresh the recollections of these witnesses. (See *People v. Hustead, supra,* 74 Cal.App.4th at p. 417; see also *People v. Memro, supra,* 38 Cal.3d at p. 677 ["one legitimate goal of [*Pitchess*] discovery is to obtain information 'for possible use to impeach or cross-examine an adverse witness' "].)

Haggerty does not dispute the potential relevance of the particular factual information contained in the Internal Affairs report, but instead argues that as a matter of law a party seeking law enforcement officer complaint investigation records is entitled only to the disclosure of the names, addresses and telephone numbers of relevant witnesses and is permitted to obtain a copy of the actual records only after the party's own discovery efforts are unsuccessful. In support, Haggerty cites a line of criminal cases that have arisen in the more typical *Pitchess* context where a criminal defendant seeks discovery of

prior third party complaints to prove the arresting officer had a history of engaging in violent acts to support the criminal defendant's excessive force/self-defense claims. (See *Arcelona v. Municipal Court* (1980) 113 Cal.App.3d 523 [169 Cal.Rptr. 877]; *Carruthers v. Municipal Court* (1980) 110 Cal.App.3d 439 [168 Cal.Rptr. 33]; *Kelvin L. v. Superior Court* (1976) 62 Cal.App.3d 823 [133 Cal.Rptr. 325]; see also *City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at p. 84; *City of Azusa v. Superior Court* (1987) 191 Cal.App.3d 693, 696–697 [236 Cal.Rptr. 621].) In this context, the courts have generally limited the criminal defendant to the names, addresses and telephone numbers of the prior complainants/witnesses unless the defendant shows he or she has been unsuccessful in obtaining the relevant information. (See *People v. Matos* (1979) 92 Cal.App.3d 862, 868 [155 Cal.Rptr. 293].) This judicially created rule seeks to ensure a defendant will not rely solely on prosecution investigation efforts and imposes a further safeguard to protect officer privacy where the relevance of the information sought is minimal and the officer's privacy concerns are substantial. (See *City of Santa Cruz v. Municipal Court, supra,* 49 Cal.3d at p. 84; see also *Pitchess v. Superior Court, supra,* 11 Cal.3d at p. 537.)

Haggerty has not cited, nor has our research disclosed, any decision in which a court has applied this limitation on permissible *Pitchess* discovery in a context other than where the party seeks prior third party complaint discovery. We believe an extension of this rule is unwarranted here. The central rationale underlying the rule limiting discovery to witness identifying information is that the actual documents of third party complaint information often have minimal relevance and constitute a substantial invasion of officer privacy. This reasoning does not apply in this case. As compared with the third party complaint situation, the information contained in the Internal Affairs report is highly probative. Guindazola has the burden of proving the elements of his claims, and the investigation at issue concerns the very incident that is the subject of the civil claim. Additionally, Haggerty's reasonable privacy concerns are diminished because he is the defendant in the litigation and the requested internal investigation records concern his actions that are alleged to be wrongful and will be fully litigated at trial.

■ Because of the direct relevance of the information, the courts have generally recognized that the law enforcement records of the investigation at issue may be discoverable and have never imposed any special limitations on this disclosure if the requested discovery otherwise meets the statutory criteria. (See *Robinson v. Superior Court, supra,* 76 Cal.App.3d at p. 978 [" '[a]ll statements made by percipient witnesses and witnesses . . . *related to the incident in question*' . . . are discoverable under the standards set forth in *Pitchess*," italics added]; see also *People v. Alexander* (1983) 140 Cal.App.3d 647, 659 [189 Cal.Rptr. 906], disapproved on another point in *People v.*

*Swain* (1996) 12 Cal.4th 593 [49 Cal.Rptr.2d 390, 909 P.2d 994].) This is the correct rule as applied to the circumstances here.

Contrary to Haggerty's assertions, *City of Hemet v. Superior Court, supra,* 37 Cal.App.4th 1411, did not hold otherwise. In that case, the issues concerned whether a newspaper was entitled to obtain police personnel records under the California Public Records Act and whether the disclosure of those records was governed by *Pitchess* statutory standards. (*Id.* at pp. 1416–1431.) In the course of describing the general *Pitchess* statutory rules, the *City of Hemet* court noted that generally a party is entitled only to the names of witnesses "so that the seeking party can conduct his own investigation." (*Id.* at p. 1425.) But these statements were dicta and the court never analyzed whether the limiting rule properly applies in a situation where a civil litigant is seeking records of the investigation of the same incident that is at issue in the civil lawsuit. Because *City of Hemet* did not consider the legal issue presented here, it does not support Haggerty's argument.

■ The court did not abuse its discretion in refusing to limit the discovery to the names, addresses and telephone numbers of the witnesses identified in the Internal Affairs report.

### C. *The Disclosure of the Report Does Not Violate Public Policy*

Haggerty next argues that even if the disclosure were permitted under the relevant statutes and case law, we should reverse the trial court's order based on public policy grounds. In support of this argument, Haggerty relies on federal and state authority prohibiting the introduction of subsequent repairs at trial based on the concept that permitting this evidence will discourage remedial measures. (See § 1151; *Maddox v. City of Los Angeles* (9th Cir. 1986) 792 F.2d 1408, 1417.) However, even if we were to accept the argument that the Internal Affairs report was a "remedial measure," the argument is unavailing because the issue here is not whether the report should or would be admissible at trial, but whether the factual information contained in the report could lead to the discovery of relevant and admissible evidence.

Haggerty additionally argues that a disclosure of the Internal Affairs report in this case "will have a chilling effect on every law enforcement agency's ability to conduct an uninhibited, thorough and candid analysis of a citizen's complaint." These concerns are speculative. The fact that statements to an investigating officer may be discoverable in a later civil proceeding (subject to a strict protective order for the use of such information) does not mean a public agency would be unable to conduct a complete analysis of a citizen's complaint. Moreover, the question whether police investigation records are

discoverable has been answered by the Legislature in enacting the *Pitchess* statutory scheme. The "legislation was intended to balance the need of criminal defendants [and civil litigants] to relevant information and the legitimate concerns for confidentiality of police personnel records." (*People v. Breaux* (1991) 1 Cal.4th 281, 312 [3 Cal.Rptr.2d 81, 821 P.2d 585].) In balancing these interests, the Legislature made a decision that relevant evidence contained in a personnel file (defined to include internal investigation reports) should be disclosed upon a proper showing of materiality and relevance, and did not provide any blanket exceptions to the discoverability of such reports, particularly in the civil context. To the extent Haggerty believes it would be good public policy to create such an exception, he should direct these arguments to the Legislature.

We note that our holding in this case does not mean that law enforcement internal investigation reports of the incident at issue in a lawsuit must be routinely disclosed. The court in each case must make an initial finding that the requested information is material, and after reviewing the information at an in camera hearing, that the documents are relevant within the meaning of section 1045, subdivision (a) and that the disclosure would not fall within any of the exceptions set forth in the statute. Additionally, our Supreme Court has recognized that even if information is relevant under the *Pitchess* statutes, a trial court retains the authority to uphold a claim of privilege when " 'the need to maintain its secrecy is greater than the need for disclosure in the interests of justice.' " (*People v. Memro, supra,* 38 Cal.3d at p. 689.) There was no showing in this particular case that the need for secrecy of the internal affairs file outweighs the need for disclosure. The superior court examined the Internal Affairs report and found it contained relevant evidence and that "[i]n balancing [Haggerty's] privacy interest in his personnel file against the need for disclosure, the scale tips in favor of disclosure under these circumstances." Except with respect to the investigating officer's analysis and conclusions, we find the court acted within its discretion in reaching this conclusion.

## DISPOSITION

Let a writ issue directing the superior court to vacate its September 15, 2003 order and directing the court to redact those portions of the March 8, 2001 Internal Affairs report reflecting the investigating officer's conclusions, defined to mean the "thought processes of, and factual inferences and deductions drawn by, an officer investigating a complaint, concerning such matters as the credibility of witnesses or the significance, strength, or lack of evidence." (*City of San Jose v. Superior Court, supra,* 5 Cal.4th at p. 55.) Once that process is complete, the court is directed to order the remaining portions of the March 8, 2001 Internal Affairs report produced to Guindazola,

with the proper protective order protections. The parties to bear their own costs in this writ proceeding.

McConnell, P. J., and Benke, J., concurred.