Filed 2/26/14  P. v. Foust CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  The opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G047611 |
| v. | (Super. Ct. No. 09CF1387) |
| STEPHEN THOMAS FOUST, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Robert R. Fitzgerald (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) and M. Marc Kelly, Judges.  Reversed with directions.

David McNeil Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Kathryn Kirschbaum, Lynne G. McGinnis and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

A jury convicted Stephen Thomas Foust of assaulting a peace officer with a semiautomatic firearm (Pen. Code, § 245, subd. (d)(2); all statutory references are to the Penal Code unless otherwise stated), exhibiting a firearm in a peace officer's presence (§ 417, subd. (c)), and found he personally used a firearm in committing the assault (§ 12022.53, subd. (b)). Foust contends the trial court erred by failing to review Santa Ana Police Department personnel records to determine whether they contained discoverable statements provided by two police officers who were percipient witnesses. For the reasons expressed below, we conditionally reverse the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2009, Foust's father called 911 and reported an intoxicated and distraught Foust possessed a firearm and threatened suicide with a firearm. A tense and lengthy standoff ensued between Foust, seated in the front driver's seat of his car parked outside his home, and Santa Ana police and its Special Weapons and Tactics (SWAT) team. The standoff concluded when SWAT negotiator Detective Frank Fajardo yelled "threat" and Officer John Quijas fired a MP5 submachine gun, striking Foust above the shoulder blade.

Foust's gun, a nine-millimeter Intratec semiautomatic pistol, contained a magazine with 25 rounds. Investigators recovered the firearm after Foust dropped it outside the car. Officers found 270 additional rounds of ammunition in the passenger area of Foust's car. The prosecution's firearm expert testified Foust's gun had jammed because the lever had been pulled back three times to chamber a round. Foust's blood-

2

alcohol concentration level was approximately 0.26 percent, more than three times the legal limit to drive.

The prosecution charged Foust with using a semiautomatic firearm to assault Sergeant Alex Sanchez, one of the first officers to arrive at the scene, and Fajardo, who arrived later with the SWAT team. The jury convicted Foust of assaulting Fajardo with a semiautomatic fireman, but acquitted Foust of assaulting Sanchez, instead opting to convict him of the lesser included offense of exhibiting the firearm in Sanchez's presence. An issue at trial was whether and how Foust pointed his weapon at these officers. In November 2012, the trial court sentenced Foust to an aggregate prison term of 28 years.

II

DISCUSSION

A. *Pretrial Motions for Review of Police Personnel Records*

In December 2009, before the preliminary hearing, Foust moved for the production, inspection, and copying of the Santa Ana Police Department personnel records (Evid. Code, § 1043; see *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, 57; *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*)) for Officers Fajardo and Quijas. Foust sought records "pertaining to" their use of excessive force or violence, filing false police reports, making false statements in police reports, and false arrests made within five years preceding the charged crimes. He also sought "any and all statements, whether recorded in writing, orally or by video recording, given or prepared by" the detectives "that are part of the internal investigation conducted by the Santa Ana Police Department involving the shooting of the defendant on June 1, 2009 as described

3

in Santa Ana Police Department case number 2009-19229." Counsel asserted the records contained evidence relevant and material to "issues of the defendant's defense to the charge of [assault on a peace officer] and the [firearm] enhancement . . . ."

Foust's counsel filed a declaration asserting good cause existed to produce the material, explaining that SWAT team members Fajardo and Quijas played key roles in the confrontation with Foust, but did not speak to investigators after officers apprehended Foust. Instead, Officer Rose, another officer on the scene, spoke with investigators. He reported that after lengthy negotiations during the standoff between Foust and Fajardo, Foust leaned out the driver's side window and pointed his weapon at the officers, who stood behind a ballistic shield. Fajardo yelled "threat," and Quijas fired twice. Counsel provided a lengthy explanation why the physical evidence contradicted Rose's statement and asserted Foust was not leaning out the window when Quijas fired, but was "seated properly in the driver's seat with his left shoulder and right shoulder against the back of the seat [as if driving]."[1]

---

[1] Counsel's declaration asserted the following: "The reason these statements are necessary is because there is a dispute as to what the defendant did immediately preceding him being shot, that is immediately preceding the moment when Detective Quijas fired his weapon. There is a dispute as to whether the defendant did anything to justify Detective Fajardo calling 'threat' which gave Detective Quijas the green light to fire his weapon. Specifically, there is a dispute as to whether the defendant actually leaned out of the driver's window and pointed his firearm at the officers immediately preceding his being shot. [¶] Detective Rose stated that the defendant leaned his upper body out of the open driver's window, turned his body towards the three officers standing at the rear left side of his vehicle and pointed the firearm at the three officers. At this precise moment, Detective Fajardo yelled 'threat', and at this precise moment, Detective Quijas fired into defendant's vehicle, striking the defendant in the back. [¶] From Detective Rose's statement, defendant was leaning out of the driver's open window, turned towards the officers in a position where his right shoulder was rotated away from the vehicle and towards the officers so that the firearm, being held in defendant's right hand, was pointed at the officers. It was in this position that the bullet fired by Detective Quijas struck and entered the defendant's body. [¶] The physical

4

evidence completely contradicts what Detective Rose described in his statement. The physical evidence consists of the point on defendant's body where the bullet entered as well as the general path of the bullet as it moved through his body. The bullet remained in his body for a considerable period of time after he was shot, was not removed surgically, and eventually worked its way out of defendant's throat many months after June 1, 2009, the date defendant was shot. [¶] The bullet entered defendant's body in his back. The point of entry is approximately four inches below the top of his shoulder where the shoulder meets the neck. If you drew a line vertically on the defendant's back as an elongation of the left side of the defendant's neck, the entry would is just to the left of this vertical line that is the elongation of defendant's neck. In essence, the entry wound is just to the left of the defendant's spine, approximately four inches below where defendant's shoulder joins his neck. [¶] The path of the bullet is directly forward. The bullet did not exit the defendant's body, but instead lodged in his throat just left of his Adam's apple and left of his spine. Eventually, the bullet worked its way out of his neck on its own while defendant was in custody. But clearly, the path of the bullet was a straight line from defendant's back to his front. [¶] The only way the path of the bullet would be a straight line from his back to his front is if the defendant was seated properly in the driver's seat with his left shoulder and right shoulder against the back of the seat, the same way one would sit when driving. Since the bullet entered the vehicle from directly behind the defendant, the path of the bullet would be from the back of the vehicle to front of the vehicle. The only way to line up the path of the bullet in the defendant's body to coincide with the path of the bullet while it was in the vehicle is if the defendant is seated with both his shoulders against the driver's seat, again as one would sit when driving a vehicle. [¶] If the defendant was seated in the vehicle as Detective Rose stated he was seated at the moment Detective Quijas fired, the path of the bullet in the defendant's body would be radically different than it was in reality. If the defendant was leaning with both shoulders out of the vehicle pointing the firearm at the officers at the moment Detective Quijas fired, the bullet perhaps would have hit the defendant in the same spot, though not likely, but the path of the bullet would not have been from the defendant's rear to the front in a straight line but would have passed in a diagonal line through the defendant's body. The bullet in this instance would have moved from the point of entry just left of the defendant's spine diagonally to the right side of his body and would have impacted defendant's spine and in all likelihood severed his spine. But such was not the case. The bullet did not travel diagonally through defendant's body severing his spine. Rather the bullet traveled from his rear directly to the forward, missing his spine entirely. [¶] From the physical evidence, defendant was not leaning outside the vehicle when he was shot but rather was seated inside the vehicle with both his shoulders against the driver's seat. This unquestionably means that at the time Detective Quijas fired, defendant was <u>not</u> leaning outside the vehicle pointing the firearm at the officers. This means that Detective Rose's statement is not correct. [¶] Since the only statement of relevance regarding defendant's actions that lead to these charges being filed came from Detective Rose, and since the physical evidence shows Detective Rose's statement

5

Counsel asserted if the officers provided statements that were subsequently placed in their personnel files, it would be "critical for the defense to learn what these two officers believed happened immediately preceding and at the point [] Quijas fired his weapon. . . . [T]here is a dispute as to what the defendant did immediately preceding him being shot . . . . There is a dispute as to whether the defendant did anything to justify . . . Fajardo calling 'threat' which gave [] Quijas the green light to fire his weapon. Specifically, there is a dispute as to whether the defendant actually leaned out of the driver's window and pointed his firearm at the officers immediately preceding his being shot."

The city attorney representing the Santa Ana Police Department argued the motion should be denied because Foust sought information not authorized by *Pitchess* procedures, counsel's declaration provided "no factual information that would warrant" the court's review of the personnel files, and Foust's motion was a "classic fishing expedition."

At a hearing on January 22, 2010, Judge Fitzgerald denied the motion, stating there was an "insufficient showing of misconduct by an officer justifying the intrusion into the personnel records by the court." The court "order[ed] any existing police reports that haven't been turned over to the prosecutor to be made available to the prosecutor for dissemination and, thereafter, discovered properly." Counsel asked if this included reports made as part of an internal affairs investigation, and the court stated, "No. I don't know that there has been an internal affairs investigation, and you haven't sustained a burden for the court to inquire about that."

to be incorrect, it is critical that the information requested in Exhibit A, especially any and all statements given by Detectives Fajardo and Quijas in the internal investigation conducted by the Santa Ana Police Department, be provided to the defense." (Original underscoring.)

6

The court conducted a preliminary examination in May 2011. Fajardo testified Foust threatened to kill the officers during negotiations spanning nearly two hours. Eventually, Foust placed his gun parallel to the open driver's side window and cracked the door open. Fajardo testified he saw Foust extend his right arm out the window and the gun was "pointed right at me." Fajardo dove to his left and yelled "threat." Fajardo acknowledged he provided an oral statement to the department's internal affairs unit concerning the incident. Quijas also apparently provided a statement to internal affairs.

After the preliminary hearing, Foust filed a second *Pitchess* motion seeking "'potentially relevant'" personnel records, including "any internal investigations into the incidents leading to the arrest in the instant matter, and including recorded statements . . . ." Counsel's declaration alleged both Fajardo and Quijas gave recorded statements to their department that had not been turned over to the defense. Counsel again asserted Foust did not "level[] his gun at police and did not threaten the lives of the officers as testified at the preliminary hearing. The [d]efense contends that [] Foust was shot by Quijas either recklessly or negligently and that both Quijas and Fajardo have lied about the events in order to protect Quijas and the Santa Ana Police Department from any ramifications from the shooting." (Boldface omitted.) Counsel cited "differences" in various officers' reports and witness accounts concerning how Foust moved, what he said, and where he pointed his weapon.

The city attorney relied on the same grounds it raised in opposing the first motion, and also added that impeachment of an officer did not establish good cause for discovery. The city attorney urged the court to transfer the matter to Judge Fitzgerald

7

who ruled on the prior motion. The trial court agreed and referred the matter back to Judge Fitzgerald because "the motion is so inherently similar to the first one."

At a hearing before Judge Fitzgerald on April 6, 2012, Foust's counsel stated he was "requesting [the] statements of Quijas and Fajardo." He asserted both officers testified at the preliminary hearing, their testimony was untruthful, and the prior statements would constitute evidence of untruthfulness. The court denied the motion for "the same reason" it denied the motion earlier: "insufficient showing of good cause to grant the *Pitchess* request."

In July 2012, Foust moved pretrial to exclude Fajardo's and Quijas's testimony because the prosecution failed to provide the defense with their statements to internal affairs investigators. The trial court treated the motion as a request to revisit the *Pitchess* issue based on Fajardo's reliance on our recent decision in *Rezek v. Superior Court* (2012) 206 Cal.App.4th 633 (*Rezek*). The city attorney argued *Rezek* did not eliminate the necessity of providing good cause for an in camera review, and the defense had not shown "misconduct" or "lying" by Officers Fajardo and Quijas because the defense made no showing that contradicted the officers' preliminary hearing testimony. Defense counsel disagreed, stating the "physical evidence indicates my client was shot in the back" and "[i]f he was turned around pointing the gun at [the] officers, he would have been shot in the face or the front. And, therefore, the statements of the officers indicating [he] pointed a weapon at them are inaccurate, if not an outright bald-faced lie."

The trial court denied the motion to reconsider the *Pitchess* issue, explaining *Rezek* "doesn't stand for the proposition that there's new law or anything additional that would warrant conducting a new good cause hearing," and the court had "seen nothing to disturb Judge Fitzgerald's previous rulings on the issues." The court

8

continued, "Judge Fitzgerald considered everything and made the ruling that you had not met your threshold showing of good cause. And he did that twice." The court also denied Foust's motion to exclude the officers' testimony and stated it would not allow the defense to ask the officers about their statements to internal affairs investigators.

B.  *The Trial Court Erred in Finding No Good Cause Existed for Discovery of the Officers' Personnel Records*

Foust contends the trial court erred when it denied his *Pitchess* motion seeking discovery of the internal affairs investigation of the shooting, including Fajardo's and Quija's statements. We review the trial court's denial of a defendant's *Pitchess* motion for abuse of discretion. (*People v. Johnson* (2004) 118 Cal.App.4th 292, 298 (*Johnson*).)

In *Pitchess, supra*, 11 Cal.3d at pages 537-538, the California Supreme Court recognized a criminal defendant's right to obtain discovery from a police officer's confidential personnel records if those files contain information that is potentially relevant to the defense. "In 1978, the California Legislature reaffirmed and expanded the discovery principles set forth in *Pitchess* [citation], by enacting [Evidence Code] sections 1043 through 1047 and Penal Code sections 832.7 and 832.8." (*People v. Johnson, supra*, 118 Cal.App.4th at pp. 298-299.) Under these procedures, a criminal defendant begins the discovery process by filing a motion supported by affidavits showing "good cause" for an in camera review of an officer's personnel records. (Evid. Code, § 1043, subd. (b)(3).) Good cause exists if the defendant shows the "materiality" of the requested documents to the pending litigation and a "reasonable belief" that the agency has the type of information sought. (*Ibid.; Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1016,

9

1019 (*Warrick*).) This two-part showing is a relaxed standard that establishes a low threshold for discovery. (*Ibid*.)

In *Warrick*, the Supreme Court described the showing needed to establish materiality under Evidence Code section 1043: "[D]efense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may itself lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses." (*Warrick, supra*, 35 Cal.4th at p. 1024.) Counsel's affidavit also must describe a plausible factual scenario to support the claim of officer misconduct. (*Id*. at pp. 1024-1025.) "[A] plausible factual scenario of officer misconduct is one that might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the charges." (*Id*. at p. 1026.)

In sum, showing good cause for an in camera review is a fairly easy standard for the defense to meet. For example, in *Johnson*, defense counsel's declaration stated that the defendant, contrary to the officer's claim, denied asking the officer for drugs and claimed he never took possession of any packages containing narcotics. We found that "counsel's declaration set forth a sufficient factual foundation showing [the officer's] truthfulness was material to the case." (*Johnson, supra,* at p. 303; see *People v. Hustead* (1999) 74 Cal.App.4th 410, 416-417 [defense counsel's declaration on information and belief that the defendant denied driving in the manner claimed by the arresting officer established a plausible factual scenario the defendant did not evade arrest and the officer's account was fabricated].)

Foust, however, contends he did not have to comply with the materiality requirement described in *Warrick*. Citing *Rezek* in support, Foust argues the statements of percipient witnesses automatically satisfy the materiality requirement for an in camera review of officer personnel records. In other words, materiality is satisfied even without a showing of officer misconduct because the statements of percipient witnesses must be disclosed under "standard discovery doctrines." We need not reach this issue because Foust presented a plausible factual scenario of officer misconduct relevant to his defense and therefore established good cause for an in camera review of peace officer personnel files.

First, Foust's lawyer demonstrated a reasonable belief the agency possessed the information sought. Fajardo testified at the preliminary hearing he spoke with his department's internal affairs unit about the incident, and the Attorney General does not claim Foust's attorney lacked a reasonable belief that the Santa Ana Police Department possessed reports of Fajardo's and Quija's statements.

Second, Foust's lawyer demonstrated the materiality of the requested documents as required under Evidence Code section 1043 et seq. and as explained in *Warrick*. Foust's lawyer in his declaration represented Foust would deny at trial he "pointed his gun out the window and leveled it at the officers." (Boldface omitted.) Counsel explained "Foust never leveled his gun at police and did not threaten the lives of officers as testified at the preliminary hearing. The Defense contends that Mr. Foust was shot by Quijas either recklessly or negligently and that both Quijas and Fajardo have lied about the events in order to protect Quijas and the Santa Ana Police Department from any ramifications from the shooting." Foust's lawyer described in detail the facts supporting his claim that the entry wound and the trajectory of the bullet showed that Foust was

11

sitting upright with his back against the car seat and not, as the officers claimed, leaning out the driver's side window.

Counsel's declaration satisfied *Warrick's* materiality test. As *Warrick* observed, a lawyer's affidavit describing a factual scenario supporting the claim of officer misconduct "may consist of a denial of the facts asserted in the police report." (*Warrick, supra*, at pp. 1024-1025.) Here, counsel's declaration denied the key facts contained in police reports and the accounts given by Fajardo and Quijas in their preliminary hearing testimony. Foust's lawyer specified a scenario that "might or could have occurred" (*id.* at p. 1026), and supported a defense to the count naming Fajardo as the victim. Statements by Fajardo or Quijas to internal affairs undermining or diminishing their preliminary hearing testimony would support Foust's defense. The issue is not whether Foust's factual scenario was credible, but whether it was plausible, and Foust's lawyer met this standard when he specified facts showing Foust may have been sitting with his back to the car seat when he was shot, and therefore could not have assaulted Fajardo in the manner claimed. Corroboration of a defendant's misconduct claim or evidence of a motive for the alleged officer misconduct is not required. (*Id.* at p. 1025.)

The Attorney General, however, argues Foust did not show a plausible scenario of officer misconduct. She asserts that even if Foust did not lean out the window and point his gun at the officers immediately before he was shot, "the assault charges in this case were not based on [Foust's actions] at the moment of the shooting or after the shooting. Rather, the charges were based on [Foust's] actions during the *preceding* three hours, when he repeatedly threatened officers and pointed a gun in their

12

general direction, as the detectives attempted to negotiate a peaceful resolution to the stand-off with him."

There are several flaws in the Attorney General's reasoning, the foremost being the city attorney representing the officers in the *Pitchess* motion failed to raise this theory below. Based on the police reports and Fajardo's preliminary hearing testimony, Foust reasonably assumed the prosecution believed Foust assaulted Fajardo when Foust leaned out the window and pointed his firearm at Fajardo, prompting Quijas to shoot Foust. The prosecution did not contend otherwise at this stage, and in any event, the city attorney had no authority to elect which act the district attorney would rely on to support the charges. Thus, there is no basis to support the Attorney General's claim that the assault against Fajardo occurred earlier in the standoff rather than at the end. The trial court therefore had to assume the assault occurred when Foust leaned out the window and pointed his gun at Fajardo, who alerted Quijas to shoot in response. Even if the prosecution based the charges on Foust's earlier acts in the standoff, the information nevertheless was material because it may have impeached Fajardo's preliminary hearing testimony. Foust therefore established good cause for an in camera review when he presented a plausible factual scenario contesting the officers' account. Based on the foregoing discussion and our review of the record, Foust met the good cause standard under *Warrick* in the motion before Judge Fitzgerald and when the trial court reconsidered the motion in July 2012.

Assuming on remand the in camera hearing reveals discoverable information, the trial court must consider whether the internal affairs reports should be disclosed to the defense. Courts in a routine *Pitchess* motion limit the information disclosed to the names, addresses and telephone numbers of third party witnesses who

13

have lodged prior complaints, rather than reveal reports or records contained in police officer files.  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 84.)  But it makes little sense to follow that procedure here.  Fajardo and Quijas are not third party complainants, but percipient witnesses.

An exception to the normal practice exists in civil cases when the information sought concerns "the very incident that is the subject of the civil claim." (*Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1090 (*Haggerty*).)  As the *Haggerty* court explained, "The central rationale underlying the rule limiting discovery to witness identifying information is that the actual documents of third party complaint information often have minimal relevance and constitute a substantial invasion of officer privacy.  This reasoning does not apply in this case.  As compared with the third party complaint situation, the information contained in the Internal Affairs report is highly probative."  (*Ibid.*)

We see no reason why *Haggerty's* reasoning should not apply in a criminal case.  As one noted legal treatise observed, *Haggerty* "should have application in a criminal case where the records sought deal directly with the incident that is the subject which forms the basis of the criminal case.  This might occur when the investigating agency has conducted an internal affairs investigation into the incident which forms a basis for the criminal prosecution."  (Pipes & Gagen, Jr., California Criminal Discovery (4th ed. 2008) § 10:14.5.2, p. 948.)  The trial court should apply the reasoning of *Haggerty* and disclose the pertinent statements of Officers Fajardo and Quijas if it determines the reports contain information that would have been relevant to Foust's defense.

14

## III

### DISPOSITION

The judgment is conditionally reversed and remanded to permit the trial court to conduct an in camera review of the requested personnel records. If the trial court's inspection uncovers no relevant information, the trial court must reinstate the judgment. If relevant information is discovered during the in camera review, the trial court must order disclosure, allow defendant an opportunity to demonstrate prejudice from the failure to disclose the relevant information, and order a new trial if there was a reasonable probability the outcome would have been different had the information been disclosed.

ARONSON, ACTING P. J.

WE CONCUR:

FYBEL, J.

THOMPSON, J.

15