Filed 6/3/14  Green v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| CELINA GREEN | D065248 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. SCD248478) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO POLICE DEPARTMENT | |
| Real Party in Interest. | |

PROCEEDINGS in mandate after the superior court denied petitioner's *Pitchess* motion seeking records of arresting officers.  Frederic L. Link, Judge.  Petition granted.

Henry C. Coker, Public Defender, Randy Mize, Chief Deputy Public Defender, Matthew Braner and Courtney K. Cutter, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Jan I. Goldsmith, City Attorney, Mary Jo Lanzafame, Assistant City Attorney, and Noah J. Brazier, Deputy City Attorney, for Real Party in Interest.

Petitioner Celina Green[1] was charged with (1) possession of marijuana for sale (Health & Saf. Code, § 11359; count 1); and (2) resisting, delaying or obstructing an officer (Pen. Code, § 148, subd. (a)(1)). In response Green filed a *Pitchess*[2] motion, seeking the records of the arresting officers to support a claim that they lied in their police reports and used excessive force. The court denied the motion without prejudice, finding Green's declaration did not meet the good cause standard for granting a *Pitchess* motion. Green thereafter filed a second *Pitchess* motion seeking the same type of discovery from the officers, attaching a new declaration. The second motion was also denied for failing to establish good cause.

Green thereafter filed this petition for writ of mandate, asserting she satisfied the low threshold for in camera review. We conclude the court erred in denying Green's *Pitchess* motion and therefore grant the petition.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Arrest*

On June 2, 2013, at approximately 8:00 p.m., San Diego Police Officers Christopher Luth and Jorge Carranza were on patrol in the mid-city area of San Diego.

---

[1]    Although the caption of this petition refers to the petitioner as Celina Ramirez Salgado and at places in the record she is also sometimes referred to as Celina Ramirez Salgado, a review of the record shows that her true name is Celina Green.

[2]    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*).

2

They were requested by radio to assist Officers Matt Ruggiero and S. Holden at Teralta Park, which is located at 4000 Orange Avenue. Teralta Park is known to police for gang and drug activity.

Officer Ruggiero radioed Officers Luth and Carranza to contact Green. When they arrived, they saw Green as she was walking across the park. She was carrying a large purse that appeared to be full.

The officers drove over a handicap access ramp into the park and then drove across the grass, stopped behind Green, and got out of the patrol car. Green was still walking across the park. Officer Luth called out to her and asked her if he could talk to her. Green said "sure" and turned around. While talking to Green, the officers noticed she was carrying something under her arm. They asked what it was, and Green showed them a small flat box labeled "digital pocket scale." Officer Luth recognized that digital pocket scales are commonly carried by people who sell narcotics.

The officers determined that one of the males in the group, Jason Powers, was on probation. Upon discovering this, Officer Luth asked Green if he could take her purse and if she would sit in his patrol car so she could await a female officer to arrive to conduct a weapons search. Green refused to give Officer Luth the purse and yelled she was not a "fourth waiver."

Officer Luth grabbed her left wrist to prevent her from reaching into her purse. According to officers, Green tensed her muscles and began resisting the officers' force. Officer Carranza then grabbed her right wrist. The officers attempted to bring Green to the ground, but she bent her knees in order to remain on her feet. Officer Tobia

3

Terranova joined in and applied a carotid restraint. The officers forced Green to the ground, handcuffed her, and arrested her for resisting an officer.

Officer Luth searched Green's purse incident to the arrest. He found a digital scale with marijuana residue on it that matched the empty box she had been concealing under her left shoulder. Green's purse also had a small metal pipe with burnt marijuana residue and a purple bottle containing a small amount of marijuana. Officer Barajas searched Green's person. In the right front pocket of her sweater the officer found five small baggies of marijuana. Officers also found a sixth bag of marijuana in the area where Green had initially been seen by officers. A search of Green's phone showed that she had been texting Powers prior to the police contact.

B. *Declarations Filed in Support of Pitchess Motion*

In support of her first *Pitchess* motion Green filed a declaration pointing out 28 discrepancies between the officers' police reports and testimony at the preliminary hearing, alleging therefore that the officers lied in their police reports. However, that declaration did not allege that the officers used excessive force and did not adequately set forth the defense's version of events. Because of these defects, the court denied the motion, without prejudice. In doing so, the court stated that "the defense must set forth a factual scenario that establishes a plausible factual foundation for the allegations of officer misconduct–[¶] . . . [¶]– . . . and that the misconduct would be material to the defense . . . ."

Thereafter, Green renewed her motion with a new declaration that again pointed out the discrepancies between the police reports and the officers' preliminary hearing

4

testimony. Of relevance to this petition,[3] Green stated (1) Officer Luth testified that she began resisting as soon as he took her arm, but Officer Carranza testified that she did not begin resisting until Officer Luth tried to take her purse; (2) in his report and direct testimony Officer Luth omitted any mention of a carotid restraint being used, but upon cross-examination he admitted a carotid restraint was used; (3) Officer Luth initially denied that a carotid restraint is intended to make a suspect lose consciousness, but then admitted that it was intended to allow an officer to gain control of a suspect by making them lose consciousness; (4) Officer Luth failed to mention in his police report that Green was injured as a result of the struggle, only Officer Carranza mentioned visible red marks on her neck; (5) Officer Luth stated in his police report that Green pulled away from him when he grabbed her arms, but testified at the preliminary hearing that she never actually "broke free" from his grasp; (6) Officer Luth stated in his police report that he told Green that he was going to detain her, but testified at the preliminary hearing that he never told Green that he was detaining her; (7) in his police report Officer Luth did not write that he never told Green to calm down, but testified at the preliminary hearing that he told her to relax and calm down after the struggle began; and (8) Officer Luth stated that he contacted Green after 8:00 p.m., but testified that it was still daylight when he interacted with her.

Moreover, this declaration expressly alleged that Officer Luth used excessive force when he grabbed Green's arm without warning. It alleged Officer Carranza used

_____

[3] We have omitted a discussion of alleged discrepancies between the police reports and preliminary hearing testimony that are irrelevant to Green's claim of excessive force.

excessive force when he grabbed her arm and attempted to apply a pressure point restraint. Green also alleged that Officer Terranova used excessive force in applying a carotid restraint on her.

The court denied the renewed motion. In doing so, the court indicated there was no new information in the second declaration. The court stated that it felt like it was "being asked to give [Green] a second bite at the apple with no new information." However, the court also stated, "I think there was a lot of force used. My major concern was that there was a carotid restraint used on a woman. My other concern was that police in a park, drive a car across the grass to approach a woman because she leaves a known drug area possibly, but they drove across a park, in a police car, to stop a woman, who chose to walk away. . . . I think they went overboard with the . . . force." However, the court also found, "There were no lies in report[s] that I can find."

DISCUSSION

A. *Standards Governing Pitchess Motions*

In *Pitchess*, the California Supreme Court held that "a criminal defendant has a limited right to discovery of peace officer personnel records in order to ensure 'a fair trial and an intelligent defense in light of all relevant and reasonably accessible information.' " (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1038, fn. 3, quoting *Pitchess*, *supra*, 11 Cal.3d. at p. 535.)

In 1978 the California Legislature codified the holding of *Pitchess* by enacting Penal Code sections 832.7 and 832.8, as well as Evidence Code sections 1043 through 1045. (Added by Stats.1978, ch. 630, §§ 1–3 & 5–6, pp. 2082–2083; see *City of Los*

6

*Angeles v. Superior Court* (2002) 29 Cal.4th 1, 9.)  To initiate discovery, the defendant must file a motion supported by affidavits showing "good cause for the discovery"—first by demonstrating the materiality of the information to the pending litigation and second by "stating upon reasonable belief" that the police agency has the records or information at issue.  (Evid. Code, § 1043, subd. (b)(3).)  This two-part showing of good cause is a "relatively low threshold for discovery."  (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 83.)

If the trial court finds good cause for the discovery, it reviews the pertinent documents in chambers and discloses only that information falling within the statutorily defined standards of relevance.  (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226–1227; see *City of Los Angeles v. Superior Court, supra,* 29 Cal.4th at pp. 9–10.)  The trial court may not disclose complaints more than five years old, the "conclusions of any officer" who investigates a citizen complaint of police misconduct, or facts "so remote as to make [their] disclosure of little or no practical benefit."  (Evid. Code, § 1045, subd. (b); *City of Los Angeles v. Superior Court, supra,* 29 Cal.4th at p. 9.)  Typically, the trial court discloses only the names, addresses, and telephone numbers of individuals who have witnessed, or have previously filed complaints about, similar misconduct by the officer.  (See *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1089–1090.)  That practice "imposes a further safeguard to protect officer privacy where the relevance of the information sought is minimal and the officer's privacy concerns are substantial."  (*Id.* at p. 1090.)

A good cause showing "exists if the defendant demonstrates both (1) a 'specific factual scenario' that establishes a 'plausible factual foundation' for the allegations of officer misconduct [citations], and (2) that the misconduct would (if credited) be material to the defense . . . . [T]he materiality element requires the defendant to establish a logical link between the pending charge and the proposed defense, and to articulate how the requested discovery will support the proffered defense. [Citation.] Accordingly, defense counsel's supporting declaration must propose a defense and articulate how the requested discovery may be admissible as direct or impeachment evidence in support of the proposed defense, or how the requested discovery may lead to such evidence. [Citation.] Thus, a defendant meets the materiality element by showing: (1) a logical connection between the charges and the proposed defense; (2) the requested discovery is factually specific and tailored to support the claim of officer misconduct; (3) the requested discovery supports the proposed defense or is likely to lead to information that will do so; and (4) the requested discovery is potentially admissible at trial." (*Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 319.)

*Warrick v. Superior Court* (2005) 35 Cal.4th 1011 (*Warrick*) is instructive. In *Warrick* the defendant was charged with possession of cocaine base for sale, in violation of Health and Safety Code section 11351.5. The police report stated that officers observed the defendant in an area known for drug trafficking. When the officers exited their marked patrol vehicle, defendant fled, discarding a substance that resembled rock cocaine. He was arrested after a short pursuit. (*Warrick,* at pp. 1016–1017.)

8

The defendant sought disclosure of the arresting officers' personnel records seeking information on past complaints for false arrests, false police reports, or fabricating evidence. He submitted a declaration stating he admitted being in the area and fleeing from officers. He asserted, however, that he was in the area to purchase rock cocaine, not sell it. He fled when he saw the officers because he was concerned he would be arrested on an outstanding parole violation. He denied possessing or discarding any rock cocaine. Defense counsel argued the officers, not knowing who had discarded the rock cocaine, falsely claimed to have seen the defendant do so. The records sought would be used to establish the officers were not credible. (*Warrick, supra,* 35 Cal.4th at p. 1017.)

The trial court denied the motion, finding that the defendant's theory, while possible, was not plausible. Accordingly, the trial court concluded he failed to establish good cause for the disclosure of the personnel records. The Court of Appeal upheld the trial court decision. (*Warrick, supra,* 35 Cal.4th at pp. 1017-1018.)

The Supreme Court reversed. In doing so the high court noted that "a showing of good cause requires a defendant seeking *Pitchess* discovery to establish not only a logical link between the defense proposed and the pending charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events. This court has long required that the information sought must be described with some specificity to ensure that the defendant's request is not so broad as to garner '"all information which has been obtained by the People in their investigation of the crime"' but is limited to instances of officer misconduct related to the misconduct

9

asserted by the defendant. [Citations.] [¶] This specificity requirement excludes requests for officer information that are irrelevant to the pending charges. [Citation.] And it enables the trial court to identify what types of officer misconduct information, among those requested, will support the defense or defenses proposed to the pending charges. This inquiry establishes the statutorily required materiality prong of the good cause showing that a defendant must make to receive in-chambers review of potentially relevant officer records." (*Warrick, supra,* 35 Cal.4th at pp. 1021–1022.)

In discussing the Court of Appeal's reasoning, the Supreme Court reiterated that good cause under Evidence Code section 1043 required defense counsel to provide a declaration that proposed "a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses. These requirements ensure that only information 'potentially relevant' to the defense need be brought by the custodian of the officer's records to the court for its examination in chambers. [Citations.] [¶] Counsel's affidavit must also describe a factual scenario supporting the claimed officer misconduct. That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Warrick, supra,* 35 Cal.4th at pp. 1024–1025.)

The Supreme Court held that to establish a plausible factual scenario of officer misconduct, the declaration must assert a course of conduct that "might or could have occurred. Such a scenario is plausible because it presents an assertion of specific police misconduct that is both internally consistent and supports the defense proposed to the

10

charges. A defendant must also show how the information sought could lead to or be evidence potentially admissible at trial. Such a showing 'put[s] the court on notice' that the specified officer misconduct 'will likely be an issue at trial.' [Citation.] Once that burden is met, the defendant has shown materiality under [Evidence Code] section 1043." (*Warrick, supra,* 35 Cal.4th at p. 1026.) The Supreme Court concluded the factual scenario described by defense counsel was plausible under this test, thus requiring the trial court to examine the personnel records in camera. (*Id.* at p. 1027.)

Here, Green's declaration satisfied the minimal showing required to permit an in camera review of officer records. It alleged both that officers used excessive force and that they were dishonest in their descriptions of the events that led up to her being charged with resisting arrest. If excessive force was used, that would be a defense to that charge because the prosecution must prove that the police were acting lawfully when they detained and arrested her. (See CALCRIM No. 2656.) "A peace officer is not lawfully performing his or her duties if he or she is . . . using unreasonable or excessive force in his or her duties." (*Ibid.*)

11

DISPOSITION

Let a writ of mandate issue directing the superior court to vacate its ruling of November 8, 2013, and conduct an in camera review of the personnel files of the three officers accused of using excessive force for evidence of dishonesty and alleged incidents of prior use of excessive force. The stay issued by this court on January 30, 2014, is vacated.

NARES, Acting P. J.

WE CONCUR:

O'ROURKE, J.

AARON, J.