Filed 9/26/14  P. v. Willliams CA4/1
Received for posting 10/29/14
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D065613 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FVI1102456) |
| CODY WILLIAMS, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Bernardino County, Eric M. Nakata, Judge.  Conditionally Reversed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Marilyn L. George, Deputy Attorneys General.

A jury found Cody Williams guilty of resisting an executive officer, reckless evasion of a peace officer, driving a motor vehicle while under the influence of alcohol, driving a motor vehicle with a blood alcohol level of .08 or higher and battery on a peace officer, a misdemeanor. The trial court placed Williams on three years formal probation for all counts, and as to counts 3-5, the court conditioned probation on the service of 244 days in the custody of the San Bernardino County Sheriff.

Williams appeals, contending the evidence did not support his conviction for reckless evasion of a peace officer. He also asserts the trial court: (1) failed to sua sponte instruct on lesser included offenses; (2) erroneously refused his special jury instructions; and (3) improperly denied his motion under *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). We conclude the trial court erred in denying *Pitchess* discovery, conditionally reverse the judgment and remand the matter to order disclosure of certain records and to provide Williams an opportunity to demonstrate a reasonable probability the information would have led to relevant, admissible evidence he could have presented at trial that would have resulted in a different outcome at trial had the evidence been disclosed. We reject Williams's remaining contentions.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of October 23, 2011, San Bernardino County Sheriff's Deputy Nick Downey was patrolling the Phelan area. Deputy Downey contacted Daniel William Russell who had been found sleeping in his vehicle on the side of the road. As Downey completed his contact with Russell, he saw an all-terrain vehicle (ATV) driven by a person later identified as Williams. Because ATVs are not allowed to drive on paved

2

roadways in California, Downey got into his patrol car to follow the ATV. Downey observed the ATV swerving across the road and being driven on the wrong side of the road.

Downey activated his overhead lights and chirped his siren. Williams then slowed down and turned to the left, causing the ATV to jump the curb and move onto the road shoulder. After looking over his shoulder, Williams accelerated on the shoulder of the road. Downey activated his siren and drove parallel with the ATV until they reached another road. Eventually, Williams stopped the ATV and turned into Downey's vehicle, denting the passenger side door of the patrol car. The ATV stalled and Williams was unable to restart it.

Downey put his patrol car in park, which automatically turned off the siren, but left the lights illuminated. Downey pulled out his firearm because he did not know who he was dealing with. Williams was wearing a jacket, pants, goggles, helmet and backpack. The backpack concerned Downey because drug runners in that area, who sometimes used backpacks and ATVs, were usually armed.

Downey heard the ignition on the ATV trying to start. He repeatedly told Williams to get off the ATV, but Williams did not comply. When Downey saw that Williams had nothing in his hands he re-holstered his gun and tried to pull Williams off the ATV. Williams turned and punched Downey on the left side of Downey's face with a clenched fist. Downey tried pulling Williams off the ATV from behind, but lost his grip and knocked Williams's helmet off. Downey warned Williams that he would use his taser if Williams did not get off the ATV. During this time, Williams was swinging his arms and trying to punch Downey.

3

Downey deployed the taser onto Williams's chest and back, but saw no effect on Williams. Because Williams continued swinging his fists at Downey, Downey struck Williams with his baton five to six times on Williams's back and rib area. Williams mumbled something incoherently as he tried to grab the baton. Williams's lack of reaction to the taser and baton strikes caused Downey to believe he was intoxicated or possibly on PCP.

When Downey stepped back to reevaluate the situation, Williams got off the ATV, assumed an aggressive stance with balled fists and approached Downey while swinging his arms. Downey backed away and hit Williams in the face with the baton, but observed no effect. Fearing for his life, Downey decided not to pull his firearm, but instead hit Williams in the head with his baton in an attempt to knock Williams out. Eventually, Downey was able to handcuff Williams. At this point Downey requested that the watch commander respond to the scene. Another deputy arrived and helped Downey restrain Williams's legs.

A radio call log of the incident showed that Downey's contact with Williams lasted a little over 12 minutes. After Downey advised Williams of his *Miranda* rights, Williams stated that he had drunk four shots of rum and was trying to go home. (*Miranda v. Arizona* (1966) 384 U.S. 436.) Williams did not remember hitting the patrol vehicle, but admitted punching Downey. Analysis of Williams's blood revealed a blood alcohol level of .23 percent. Williams suffered a concussion that has resulted in his inability to clearly remember events of that evening and short-term memory loss. He required surgery to his eye socket, which included the placement of 22 screws and five plates.

At trial, Sheriff Robert Fonzi, the individual who oversaw use of force investigations, testified that a taser can be ineffective if only one of the two darts hits the person, the distance between the two darts is too large or a person is intoxicated by alcohol or drugs. Fonzi opined that the blow to Williams's head with the baton had been "reasonable under [the] circumstances." He stated that Williams's physical injuries did not equate with excessive force being utilized.

## DISCUSSION

### I. *Felony Reckless Evasion*

Williams challenges the sufficiency of the evidence supporting his conviction for felony reckless evasion in violation of subdivision (a) of Vehicle Code section 2800.2 (§ 2800.2(a)). (Undesignated statutory references are to the Vehicle Code.) He claims the evidence does not show Downey used his siren or lights, the required number of violations existed to elevate the offense from a misdemeanor to felony status, or conduct creating a substantial danger to persons or property.

Where a defendant challenges the sufficiency of the evidence supporting a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. (*People v. Jennings* (1991) 53 Cal.3d 334, 364.) Unless the testimony is physically impossible or inherently improbable, a single witness's testimony is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181; Evid. Code, § 411.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province

of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) We may not set aside a judgment for insufficiency of the evidence unless it clearly appears that there was no hypothesis upon which there was substantial evidence to support the verdict. (*People v. Conners* (2008) 168 Cal.App.4th 443, 453.)

Subdivision (a) of section 2800.1 (§ 2800.1(a)) makes it a misdemeanor to willfully evade a peace officer if the peace officer's motor vehicle is distinctively marked, operated by a peace officer, "exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp" and "sounding a siren as may be reasonably necessary." Section 2800.2(a) elevates the offense to a felony where the defendant flees or evades an officer by driving a vehicle "in a willful or wanton disregard for the safety of persons or property. . . ." Subdivision (b) of section 2800.2 (§ 2800.2(b)) defines willful or wanton disregard as including, but not limited to, "driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under Section 12810 occur, or damage to property occurs."

We reject Williams's first contention that the evidence does not show Downey's use of his siren and overhead lights. Downey testified that after he observed Williams's erratic driving he activated his overhead lights and "chirp[ed]" his siren which caused Williams to slow the ATV and make a sharp left turn onto the shoulder of the road. Downey's lights included a forward facing red light. While Williams drove on the dirt road shoulder, he turned to look at the patrol car and accelerated. Downey then activated his siren as he drove

6

parallel to Williams. Downey followed Williams with his lights and siren activated until Williams ultimately stalled the ATV and Downey parked his patrol car, which automatically shut off the siren while keeping the lights activated.

Although Williams testified he did not remember hearing a siren, he also stated his memory of the event was not good as a result of the concussion he suffered. Williams was also wearing a helmet and testified that the ATV "make[s] a decent sound." Russell testified he never heard a siren and claimed that the patrol car's overhead lights were not on when he passed the scene. The conflicting testimony of Williams and Russell does not demonstrate that Downey's testimony was inherently improbable or physically impossible. Rather, it was for the jury to determine which witness or portions of testimony to believe. (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.)

Williams next claims the evidence does not show the required number of violations existed to elevate the offense from a misdemeanor to felony status. The trial court instructed the jury that the following violations are each assigned a traffic point: (1) crossing double parallel solid yellow lines (§ 21460, subd. (a)); (2) failing to drive on the right side of a roadway (§ 21650); (3) failing to yield to approaching traffic while entering a highway (§ 21804); and (4) reckless driving (§ 23103). Downey testified that Williams illegally drove across parallel solid yellow lines (§ 21460, subd. (a)) and failed to drive on the right side of a roadway (§ 21650).

Williams does not challenge that this testimony established two of the three necessary traffic violations. Instead, he asserts: (1) his alleged failure to yield to Downey's vehicle (§ 21804) cannot be used to establish one of the required violations because it is a necessarily included offense of evading a pursuing peace officer; and (2) reckless driving (§ 23103) could not qualify as one of the three one-point violations to make his evasion of a peace officer a felony under section 2800.2(b), because the offense is necessarily included as part of the underlying offense of evading a pursuing peace officer in violation of section 2800.2(a). As we shall explain, an individual can recklessly evade a pursuing police officer in violation of section 2800.2(a) without committing reckless driving in violation of section 23103; thus, we reject Williams's assertion that reckless driving does not qualify as one of the violations because it is a necessarily included offense of recklessly evading a pursuing officer. Based on this conclusion, we need not address his failure to yield arguments.

The crime of reckless driving prohibits "driv[ing] a vehicle upon a highway in *willful or wanton disregard* for the safety of persons or property." (§ 23103, subd. (a), italics added.) For purposes of reckless driving, "willful or wanton disregard" means the driver intentionally and consciously acted with reckless disregard of the consequences of his actions. (*People v. Schumacher* (1961) 194 Cal.App.2d 335, 340.)

The crime of recklessly evading a police officer requires that "the pursued vehicle is driven in a *willful or wanton disregard* for the safety of persons or property. . . ." (§ 2800.2(a), italics added.) For purposes of section 2800.2(a), however, "willful or wanton disregard" means "driving while fleeing or attempting to elude a pursuing peace officer during which time . . . three or more violations that are assigned a traffic violation point

8

count under Section 12810 occur. . . ." (§ 2800.2(b).) Because the meaning of the term "willful or wanton disregard" differs, it is possible to violate section 2800.2(a), without violating 23103. Stated differently, a person who committed three violations would, on that basis *alone*, satisfy the "wanton or willful disregard" requirement of section 2800.2(a). For purposes of section 23103, however, a jury would have to decide whether these violations were sufficient to evidence " 'willful or wanton disregard for the safety of persons or property.' " (See *People v. Howard* (2005) 34 Cal.4th 1129, 1138-1139 [a violation of section 2800.2 "is not, in the abstract, inherently dangerous to human life"].) Accordingly, because the crime of reckless evading can be committed without necessarily committing the crime of reckless driving, reckless driving qualifies as a violation necessary to commit the crime of reckless evading.

Finally, without citation to any authority, Williams claims his conviction of violating section 2800.2(a) must be reversed because his conduct did not create a substantial danger to persons or property, noting that the incident was brief and took place on a deserted roadway. This argument, however, ignores that for purposes of section 2800.2(a), "willful or wanton disregard" means "driving while fleeing or attempting to elude a pursuing peace officer during which time . . . three or more violations that are assigned a traffic violation point count under Section 12810 occur. . . ." (§ 2800.2(b).) The manner in which a person commits these violations is not relevant.

9

## II. *Failure to Instruct On Lesser Included Offenses*

Williams contends that as to count 2, felony reckless evasion of a police officer (§ 2800.2), the trial court had a sua sponte duty to instruct the jury on the lesser included offenses of misdemeanor evasion (Veh. Code, § 2800.1) and reckless driving (§ 23103). He also contends as to count 1, resisting an executive officer (Pen. Code, § 69), the trial court had a sua sponte duty to instruct the jury on the lesser included misdemeanor offense of violating Penal Code section 148, subdivision (a). The Attorney General argues we need not address these contentions because the alleged error was invited by Williams. We agree with the Attorney General.

"[A] trial court errs if it fails to instruct, sua sponte, on all theories of a lesser included offense which find substantial support in the evidence." (*People v. Breverman* (1998) 19 Cal.4th 142, 162 (*Breverman*).) Nonetheless, defense counsel may elect to forego instruction on a lesser included offense and present the jury with an all-or-nothing choice between conviction of the greater offense or acquittal. (See *People v. Bunyard* (1988) 45 Cal.3d 1189, 1235; *People v. Lara* (1994) 30 Cal.App.4th 658, 674.) Where defense counsel makes a deliberate tactical choice to forego instruction on a lesser included offense, the invited error doctrine applies and " 'bars the defendant from challenging on appeal the trial court's failure to give the instruction.' " (*People v. Horning* (2004) 34 Cal.4th 871, 905, citing *People v. Barton* (1995) 12 Cal.4th 186, 198 (*Barton*).) For the invited error doctrine to be applicable to the giving of an instruction, "the record must show only that counsel made a conscious, deliberate tactical choice between having the instruction and not having it." (*People v. Cooper* (1991) 53 Cal.3d 771, 831.)

Here, defense counsel advised the trial court that they did not want instruction on any lesser included offenses. The trial court asked: "So it's all or nothing?" When defense counsel responded in the affirmative, the trial court said: "Probably a smart thing in this case." While this record is not extensive, it reveals both defense counsel and the court acknowledged entitlement to instruction on lesser included offenses and demonstrates that defense counsel made a deliberate, tactical choice not to have the jury instructed on any lesser included offenses, a tactic the court acknowledged. Accordingly, Williams invited the purported error and may not rely on that error as a basis for reversing the judgment. Williams's remedy is limited to a claim of ineffective assistance of counsel. (*People v. Cooper*, *supra*, 53 Cal.3d at p. 831.) Williams, however, makes no such claim. In any event, where the record discloses counsel's choice was a matter of trial tactics a claim of ineffective assistance of counsel is generally foreclosed based on the deference accorded to counsel's tactical decisions. (*People v. Duncan* (1991) 53 Cal.3d 955, 966, 970; *People v. Hart* (1999) 20 Cal.4th 546, 623 [tactical errors are generally not deemed reversible].)

Williams relies on *Breverman* for the proposition that the invited error doctrine does not apply, suggesting *Breverman* overruled the *Barton* court's use of the invited error doctrine as applied to instructing on lesser included offenses. (*People v. Breverman*, *supra*, 19 Cal.4th at p. 154 ["The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given."].) The invited error doctrine, however, was not at issue in *Breverman* and the *Breverman* court cited to *Barton* at length without expressing any disapproval of the invited error doctrine. (*Breverman*, at pp. 156-160.) Moreover, our high

court continues to endorse the existence of the invited error doctrine where application of the doctrine is warranted by the record. (*People v. Valdez* (2004) 32 Cal.4th 73, 115-116 [court rejected application of the invited error doctrine because of an ambiguous record]; *People v. Horning*, *supra*, 34 Cal.4th at pp. 905-906 [any error in not instructing on lesser included offenses was invited].)

III. *Failure to Give Special Instructions Augmenting CALCRIM No. 2670*

A. Background

Defense counsel sought to supplement CALCRIM No. 2670 regarding lawful performance of duties by a peace officer, with special instructions regarding reasonable force and excessive force. As relevant to this appeal, defense counsel sought to instruct the jury with the following:

> "Whether a peace officer or officers uses reasonable force is determined by examining three core factors: the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight.
>
> "Of the three core factors to determine whether a peace officer or officers uses excessive force, the most important is whether the suspect posed an immediate threat to the safety of the officers or others."

The People objected to the proposed instructions. The trial court concluded that CALCRIM No. 2670 was sufficient and declined to give the requested special instructions.

The trial court instructed the jury with CALCRIM Nos. 2652 and 2670. CALCRIM No. 2652 set forth the necessary elements of the crime of resisting an executive officer, defined a deputy sheriff as an executive officer and informed the jury that "[a] peace officer

12

is not lawfully performing his duties if he is using unreasonable or excessive force in his duties." CALCRIM No. 2670 explained that the People have the burden of proving beyond a reasonable doubt that Downey lawfully performed his duties as a peace officer. It informed the jury that "[a] peace officer is not lawfully performing his duties if he is using unreasonable or excessive force when making or attempting to make an otherwise lawful arrest or detention[]." Finally, it explained special rules governing the use of force as:

> "A peace officer may use reasonable force to arrest or detain someone, to prevent escape, to overcome resistance, or in self-defense.

> "If a person knows, or reasonably should know, that a peace officer is arresting or detaining him, the person must not use force or any weapon to resist an officer's use of reasonable force.

> "If a peace officer uses unreasonable or excessive force while arresting or attempting to arrest or detaining or attempting to detain a person, that person may lawfully use reasonable force to defend himself.

> "A person being arrested uses reasonable force when he: (1) uses that degree of force that he actually believes is reasonably necessary to protect himself from the officer's use of unreasonable or excessive force; and (2) uses no more force than a reasonable person in the same situation would believe is necessary for his protection."

B. Analysis

Williams contends that, on the facts of this case and under the law, CALCRIM No. 2670 and the remaining instructions were incomplete and ambiguous as they failed to describe what constitutes unreasonable versus reasonable force. He asserts the instructions were susceptible to an incorrect interpretation by the jurors and that the trial court erred when it failed give the special instructions requested by defense counsel because they were

13

correct statements of law and complemented CALCRIM No. 2670. The People disagree, arguing the proposed instructions improperly blended the concept of excessive force by a peace officer in the context of a civil rights lawsuit with the concept of an officer using excessive force while making an arrest. The People additionally claim the court properly rejected the proposed instructions because the terms reasonable and unreasonable are commonly used and understood terms.

We review a claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) An instruction can be found to be ambiguous or misleading only if, in the context of the entire charge, there is a reasonable likelihood that the jury misconstrued or misapplied its words. (*People v. Frye* (1998) 18 Cal.4th 894, 957.) "Although trial courts, generally, have a duty to define technical terms that have meanings peculiar to the law, there is no duty to clarify, amplify, or otherwise instruct on commonly understood words or terms used in statutes or jury instructions." (*People v. Griffin* (2004) 33 Cal.4th 1015, 1022.) "A word or phrase having a technical, legal meaning requiring clarification by the court is one that has a definition that *differs* from its nonlegal meaning." (*People v. Estrada* (1995) 11 Cal.4th 568, 574.)

Here, Williams does not assert that the words "unreasonable" and "excessive" have a technical meaning different from their everyday usage. Although he claims the court's failure to define these terms rendered the instructions susceptible to an incorrect interpretation by the jurors, he fails to explain what alternative interpretation the jurors might have reached. In our view, the words "unreasonable" and "excessive" are commonly understood by speakers of the English language. Significantly jurors were instructed to

14

apply words and phrases not specifically defined using their ordinary, everyday meanings. (CALCRIM No. 200.) The ordinary meaning of unreasonable is "[n]ot endowed with reason; irrational." (Oxford English Dictionary Online (2d ed. 1989) <http://www.oed.com> [as of Sept. 25, 2014].) When addressing the actions of a person, excessive means "[t]ransgressing the bounds of law, decency, or morality; outrageous, lawless, wrongful." (*Ibid.*) The jurors' common understanding of these words was all that was required for them to be able to understand the relevant legal principles. (See *People v. Raley* (1992) 2 Cal.4th 870, 901.)

Williams relies on *Graham v. Connor* (1989) 490 U.S. 386 (*Graham*), to assert his proposed instructions contained correct statements of law. *Graham* was an action under 42 U.S.C. section 1983 in which the petitioner sought to recover damages for personal injuries that he sustained when law enforcement officers allegedly used excessive force against him during an investigatory stop. (*Id.* at p. 388.) In *Graham*, our high court articulated a number of factors for jurors to consider in deciding whether force used by an officer was reasonably necessary or excessive. (*Id.* at p. 396.) These factors are part of the civil jury instruction for civil rights actions under 42 U.S.C. section 1983. (CACI No. 3020.) Notably, although *Graham* discusses the Fourth Amendment reasonableness requirement in the context of a civil action, it does not hold "excessive force" or "reasonable force" are legal terms of art.

Moreover, standard jury instructions are approved for use as the "official instructions for use in the [S]tate of California" after an exhaustive vetting process to ensure accuracy, comprehensiveness, and comprehensibility. (Cal. Rules of Court, rule 2.1050.) Use of these standard instructions "is strongly encouraged." (Cal. Rules of Court, rule 2.1050(e).) We

conclude the standard jury instructions fully and fairly apprised the jury of the controlling principles concerning whether Downey lawfully performed his duties for the purposes of deciding whether Williams committed the crime of resisting an executive officer. Thus, these instructions did not require augmentation with the special instructions proffered by Williams and the trial court properly refused them.

## IV. Pitchess *Motion*

### A. Background

Williams filed a motion for discovery of Downey's personnel records concerning any complaints of unnecessary uses of force, making false arrests, filing false reports and the names and addresses of the people who made those complaints. He also sought internal records from the San Bernardino County Sheriff's Department of any investigation or interview concerning Downey's use of force during Williams's arrest. The San Bernardino County Counsel responded to the motion. County Counsel did not object to an in camera review of Downey's personnel records, but claimed that the request for internal affairs investigations reports and any use of force report are not retained in a peace officer's personnel records and are protected as attorney work product and attorney-client privileged material. (Code Civ. Proc., § 2018.030, subd. (a); Evid. Code, § 954.) County Counsel represented that there were no Internal Affairs investigative reports regarding the matter and that an internally generated use of force report (the Report) was protected from disclosure under the above-mentioned privileges.

The trial court reviewed Downey's personnel file, but released nothing to defense counsel as it did not find any of the contents relevant. At a hearing on the Report, defense counsel argued the Report was not privileged because law enforcement agencies had a duty to supervise and investigate uses of force to avoid liability. County Counsel clarified that while a deputy's misconduct would be investigated by Internal Affairs, a use of force investigation was handled by the Civil Liabilities Division. The Custodian of Records was present and the trial court held an in camera hearing on the Report. After the in camera hearing, the trial court concluded that the Report was a privileged communication between County Counsel and the sheriff's department.

Defense counsel called the Custodian of Records to the stand in an attempt to establish that any reports were not privileged because they were prepared, at least in part, for administrative purposes. The Custodian of Records testified that use of force reports are generated by a deputy's supervisor, but maintained by the Sheriff's Department's Civil Liabilities Division. The trial court affirmed its prior ruling that the Report was privileged.

B. Analysis

Citing *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079 (*Haggerty*), Williams claims the trial court erred in determining the Report was privileged. At a minimum, he asserts the trial court had a duty to conduct an in camera review of the material, which it refused to do. The Attorney General has no objection to our review of the confidential reporter's transcript of the in camera hearings, but asserts the Report is not discoverable as it is subject to the attorney-client privilege.

17

The attorney-client privilege is "a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer. . . ." (Evid. Code, § 954.)  "[T]he privilege applies not only to communications made in anticipation of litigation, but also to legal advice when no litigation is threatened."  (*Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 371.)  A court considering a claim of privilege may not require production of the requested information in order to determine the validity of the claim.  (Evid. Code, § 915, subd. (a); *Southern Cal. Gas Co. v. Public Utilities Com.* (1990) 50 Cal.3d 31, 45, fn. 19 ["There is no statutory or other provision that allows for . . . an inspection of documents allegedly protected by the attorney-client privilege [in order to rule on a claim of privilege."].)  We have reviewed the sealed reporter's transcript of the hearing regarding the Report and conclude the trial court correctly concluded that the Report was protected by the attorney-client privilege.

Williams's reliance on *Haggerty* is misplaced.  In *Haggerty*, a victim filed a civil rights action after being beaten by a sheriff's deputy.  (*Haggerty*, *supra*, 117 Cal.App.4th at pp. 1082-1083.)  The victim requested discovery of " '[t]he entire Internal Affairs investigation file' of the incident" and the trial court reviewed the file in camera.  (*Id.* at p. 1083.)  Unlike the instant case, there was no claim that anything in the file, which became part of the deputy's personnel records, was protected by the attorney-client privilege.  (*Id.* at pp. 1085, 1087-1091.)

Williams requests, and the Attorney General does not oppose, our independent review of Downey's personnel records. We are required to review these records to determine whether the trial court abused its discretion in refusing to disclose any contents. (*People v. Jackson* (1996) 13 Cal.4th 1164*,* 1221.) Having conducted such a review, we find the trial court erred in failing to release a citizen's complaint and resulting investigation against Downey located in Downey's sealed personnel records at pages 29 to 57. (*People v. Zamora* (1980) 28 Cal.3d 88, 93, fn. 1 ["Unsustained complaints are discoverable as well as sustained complaints."].) Upon issuance of the remittitur, the trial court is directed to order the disclosure of the above-specified material to defense counsel with the requisite protective order. (Evid. Code, § 1045, subd. (e); *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039-1047.)

The trial court shall give Williams a reasonable opportunity to determine whether the newly disclosed information would have led to any relevant, admissible evidence he could have presented at trial. In the event Williams can demonstrate he has been prejudiced by the denial of the discovery, the trial court must order a new trial. In the event Williams is unable to demonstrate prejudice as a result of the denial of discovery, the judgment is to be reinstated. (See generally, *People v. Gaines* (2009) 46 Cal.4th 172, 182-183.)

DISPOSITION

The judgment is conditionally reversed and the cause remanded with directions to the trial court order release of a citizen's complaint and resulting investigation against Downey located in Downey's sealed personnel records at pages 29 to 57 subject to an appropriate protective order. The trial court shall give Williams a reasonable opportunity to determine whether the newly disclosed information would have led to any relevant, admissible evidence he could have presented at trial. In the event Williams can demonstrate he has been prejudiced by the denial of the discovery, the trial court must order a new trial. In the event Williams is unable to demonstrate prejudice as a result of the denial of discovery, the judgment is to be reinstated. The trial court's rulings shall be subject to review on appeal. In all other respects, the judgment is affirmed.

McINTYRE, Acting P. J.

WE CONCUR:

O'ROURKE, J.

IRION, J.

20