Filed 8/27/15  P. v. Deloney CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>            v.<br><br>GEORGE ANTHONY LUTHER DELONEY,<br><br>      Defendant and Appellant. | F067499<br><br>(Super. Ct. No. F12910092)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Houry A. Sanderson, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Robert Gezi and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

### INTRODUCTION

Defendant George Anthony Luther Deloney was convicted of false imprisonment and resisting an officer following an altercation with his girlfriend.  After denying his

motion made pursuant to *People v. Superior Court* (*Romero*) 13 Cal.4th 497 (*Romero*), the court sentenced defendant to a total of six years four months.

On appeal, defendant asks this court to conduct an independent review of the materials provided for in camera inspection following his *Pitchess* motion (see *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*)). Additionally, he argues the trial court erred by failing to sua sponte instruct on Penal Code[1] section 148, subdivision (a), a lesser included offense of section 69, and by denying his motion to strike the prior conviction. We will affirm.

## BRIEF FACTUAL BACKGROUND

### The People's Case

Two 911 callers reported a domestic dispute between a man and woman walking in the area of Cedar and Dakota Avenues on the evening of December 16, 2012. Both callers indicated the man was hitting the woman, pulling her arm, and forcing her along. Police were dispatched to the scene.

Officers Jason Hurley and Patrice Sellars-Anderson arrived separately soon thereafter and observed defendant pulling Angela Guajardo down the sidewalk. Guajardo was trying to get away from defendant. Defendant released his hold on Guajardo once he realized patrol cars were present. Hurley stepped out and directed defendant to place his hands on the patrol car. Defendant refused, saying "fuck you, bitch ass nigga. I'm not doing anything you say.… You got nothing on me." Defendant was aggressive and began walking toward Officer Hurley. Hurley ordered defendant to the ground, however, defendant refused to comply with the officer's command. Defendant continued to walk toward the officer, stopping only when his chest touched the officer's outstretched left hand. During his approach, defendant continued to say "bitch ass nigga over and over"; he remained aggressive and noncompliant.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

2.

Once defendant's chest touched Hurley's hand, Hurley placed defendant in a twist-lock control hold. While it limited defendant's movement, it did not allow Hurley complete control over defendant. Despite the hold technique, defendant refused Hurley's commands to lean over the hood of the patrol car and instead pushed back against Hurley. Eventually, Sellars-Anderson was able to assist and defendant was placed in handcuffs. Defendant continued to make threatening comments: "I'm going to fuck you up … as soon as we're done here I'm going to fuck you up, bitch ass nigga."

On arriving at the scene, Officer Sellars-Anderson went after Guajardo, who had run away from defendant when he released his hold on her upon the officers' approach. Guajardo was crying and upset, but eventually agreed to speak with Sellars-Anderson, waiting in the patrol car briefly when Sellars-Anderson went to assist Hurley with defendant. Guajardo reported she had been dating defendant for about a year. She was terrified of him and indicated he had threatened to kill her before.

On this particular occasion, Guajardo wished to spend time with her mother as her brother had been shot earlier, however, defendant refused to let her go. She was trying to get away from him. Guajardo had no visible injuries and commented to the officer that defendant was "smarter than that." Guajardo asked Sellars-Anderson to let her go because she feared defendant would kill her when he was released from jail. Guajardo stated she loved defendant but was terrified of him. Sellars-Anderson detected alcohol on Guajardo's breath, but the woman was able to carry on a conversation and she did not exhibit the signs of impaired intoxication.

During transport to the identification bureau via Hurley's patrol car, defendant continued to use profanity and make threats: "you're going to get your bitch ass smoked," and "I'm going to fuck your wife in the ass so keep checking her ass to see if it's stretched out." Hurley was greatly concerned by defendant's threats. While being escorted into a cell during the booking process, defendant stopped and faced Hurley, "pumping … his body" as if to hit Hurley.

3.

Guajardo was unavailable as a witness at trial. As a result, the testimony she gave at the preliminary hearing was read into the record. Specifically, Guajardo testified she was involved in a romantic relationship with defendant. On the night of the incident, she had been drinking at home with defendant. She left home to go to Me 'n Ed's Victory Grill and ordered a drink there. She did not remember leaving the restaurant. She recalled "snapp[ing] out of it" while in the back of a patrol car and the officers speaking to defendant. The next recollection she had was waking up at home the following morning. Guajardo did not recall giving a statement to a female police officer nor making any particular statements about defendant to the officer.

On cross-examination, Guajardo indicated she had consumed about a half bottle of a hard liquor at home before walking to the restaurant and drinking a Long Island Iced Tea. She had little memory of that night. She did not suffer any injuries and she was not afraid of defendant. She did not recall speaking with an officer, male or female, nor did she remember speaking to a security guard.

On redirect examination, Guajardo admitted not knowing for certain whether defendant assaulted her, but she assumed not because she did not have a black eye or bruises. Moreover, she knew defendant would not hit her because they had been together for more than a year.

Bob Meade testified as an expert on the subject of domestic violence. In relevant part, Meade testified fear often causes a victim of domestic violence to recant earlier statements or claim an inability to remember events.

*The Defense Case*

Defendant testified in his own behalf.

On December 16, 2012, defendant and Guajardo shared a bottle of Christian Brothers brandy at home while watching a football game. At half time, they walked to the Me 'n Ed's Victory Grill to watch the second half of the game. Defendant did not drink at the bar, but Guajardo had a Long Island Iced Tea. After the game was over, they left the bar and began walking home, however the "alcohol started to kick in" for

4.

Guajardo then. She was "[s]tumbling drunk" and had he not "redirected her," she would have walked into traffic. Near the Panda Express, Guajardo staggered then fell to the ground. He picked her up and moved her over to a walkway to "try to wake her up." She was out of it so he "shook her up a little bit" and "[s]lapped her face." She did not respond immediately and was out for about five minutes. Eventually she came to, but she acted as if she had not "blacked out." They decided to head to a nearby smoke shop, but Guajardo pulled her hand out of his when she noticed a security guard nearby. Defendant told the security guard to leave because he was "staring at [them] like [they] were a circus act." As defendant did so, Guajardo "took off running."

Defendant did not chase Guajardo but watched her walk along Dakota Avenue. Eventually, the two crossed paths near the McDonald's on their way home. They did not get far, however, before an officer pulled up. The officer jumped out of his car "with his gun out" and ordered defendant to the ground. Defendant did not comply, but he did tell the officer he was not on parole or probation and asked the officer what was going on. The officer approached, continuing to direct defendant to get on the ground. Defendant continued to ask what the problem was because he knew he had not done anything wrong. Eventually the officer convinced defendant he would tell him the reason for the stop if defendant accompanied him to the patrol car. Defendant did so and denied arguing with the officer in any way. The officer handcuffed defendant but refused to answer defendant's inquiries. Defendant was placed in the patrol car, but never lunged, punched, or kicked at the officer. He did not "exchange words" with the officer. He also denied saying anything about the officer's wife.

On cross-examination, defendant denied arguing with Guajardo. He denied pulling her hair. Defendant disputed the testimony of Hurley and Sellars-Anderson that upon their arrival at the scene they observed him pulling Guajardo's hair. He also testified Sellars-Anderson did not help Hurley handcuff him. Defendant never said, "Fuck you bitch ass nigga" or directed similar sentiments to Hurley. Defendant believes Hurley made up the other remarks and attributed them to him. Defendant did admit to

5.

calling Hurley a "bitch" while he was being transported for booking because he was angry. Finally, defendant does not recall an altercation with Hurley during the booking process.

### The People's Rebuttal

Officer Hurley testified on rebuttal. He denied drawing his firearm on the night in question. His gun, baton and Taser were all available to him on his duty belt, but he did not pull any of them. Further, Hurley denied approaching defendant as defendant described.

## DISCUSSION

### Independent Review of the In Camera Proceedings

In response to defendant's *Pitchess* motion, the trial court conducted an in camera review of Officer Hurley's personnel file. It ordered the release of the name and contact information of a complaining party in a single case. On appeal, defendant asks us to review the trial court's findings de novo.

A trial court has broad discretion in ruling on both the good cause and disclosure components of a *Pitchess* motion, and its ruling will not be disturbed absent an abuse of that discretion. (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1039; *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086; *People v. Hughes* (2002) 27 Cal.4th 287, 330.) We have reviewed the sealed transcript and accompanying documents and we conclude the trial court's ruling was not an abuse of discretion. (See *People v. Mooc* (2001) 26 Cal.4th 1216, 1229-1232.)

### Trial Court's Duty to Instruct Regarding Section 148, subdivision (a)

Defendant maintains the trial court committed prejudicial error when it failed to sua sponte instruct the jury on section 148, subdivision (a) as a lesser included offense to section 69.

Section 69 can be violated two ways. The first is when a defendant "attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law." (§ 69.) The second way is when the

6.

defendant "knowingly resists, by the use of force or violence, such officer, in the performance of his duty."  (§ 69.)

Section 148 is violated when the defendant "willfully resists, delays, or obstructs any … peace officer … in the discharge or attempt to discharge any duty of his or her office or employment."  (§ 148, subd. (a)(1).)  Unlike section 69, section 148 does not include the element of the use of force or violence.

Section 148 is not a necessarily lesser included offense of the first way to violate section 69:  attempting to deter, by threat or violence, an officer from performing his or her executive duty.  (*People v. Smith* (2013) 57 Cal.4th 232, 243.)  That said, section 148 is a lesser included offense of the second way to violate section 69:  knowingly resisting, by force or violence, an officer who is performing his or her duty.  (*Smith*, at p. 241.)

Trial courts have a sua sponte duty to instruct on a lesser included offense when there is substantial evidence the defendant is guilty of the lesser offense but not the greater.  (*People v. Smith*, *supra*, 57 Cal.4th at pp. 239–240.)  ""Substantial evidence" in this context is "'evidence from which a jury composed of reasonable [persons] could … conclude[]'" that the lesser offense, but not the greater, was committed.  [Citations.]'"  (*People v. Manriquez* (2005) 37 Cal.4th 547, 584.)  We review de novo whether an instruction on a lesser included offense was required.  (*Ibid*.)

In this case, the information alleged both ways of violating section 69:

> "On or about December 16, 2012, in the above named judicial district, the crime of RESISTING EXECUTIVE OFFICER, in violation of … SECTION 69, a felony, was committed by [defendant], who did unlawfully attempt by means of threats or violence to deter or prevent Jason Hurley, who was then and there an executive officer, from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force or violence said executive officer in the performance of his/her duty."

Defendant requested the jury be instructed with CALCRIM Nos. 2651 (Trying to Prevent an Executive Officer From Performing Duty) and 2652 (Resisting an Executive Officer in Performance of Duty).  The People requested CALCRIM Nos. 2650 (Threatening a Public Official), 2651, and 2652.  Neither party requested CALCRIM

7.

No. 2656. Subsequently, the People withdrew their requests for CALCRIM Nos. 2650 and 2652. Both parties agreed to the giving of CALCRIM No. 2651 as modified by the court. Ultimately, the jury was instructed pursuant to CALCRIM No. 2651.

Defendant contends "substantial evidence supported the lesser included offense of delaying, obstructing, or resisting arrest at the time Officer Hurley was engaged in his duties," therefore, the trial court had a duty to instruct on the lesser included offense of resisting arrest. We disagree. Even assuming the People had not withdrawn the request for CALCRIM No. 2652, and had argued defendant was guilty of resisting an executive officer in performance of his duty, the trial court did not have a duty to instruct the jury in that regard.

A trial court is required to sua sponte instruct the jury regarding section 148 as a lesser included offense of section 69 if the evidence indicates the defendant was not guilty of the greater offense. (*People v. Manriquez*, *supra*, 37 Cal.4th at p. 584.) Here, however, there is more than substantial evidence defendant committed the greater crime of resisting, deterring or preventing Officer Hurley, by way of threat or violence, from the performance of his duties. (*People v. Smith*, *supra*, 57 Cal.4th at p. 245.)

Hurley testified defendant was noncompliant upon the officers' arrival on scene. Additionally, he was confrontational and aggressive. Despite being ordered to get on the ground, defendant approached Hurley in a threatening manner. He repeatedly verbally threatened Hurley, calling him a "bitch ass nigga." Defendant approached Hurley, touching his chest to Hurley's outstretched left hand, as he made his various verbal threats. Once Hurley was able to get defendant into a control hold, defendant threatened to "fuck [Hurley] up." The threats did not cease once defendant was secured in the back of the patrol car and taken for booking. In fact, the threats became more personal as defendant threatened to kill Hurley and sexually assault his wife. At the booking facility, before being placed in a cell, defendant turned toward Hurley and moved as if to strike him.

Moreover, Officer Sellars-Anderson testified defendant was "being very verbally abusive towards [her] partner and telling him to fuck off, that [the police] couldn't stop him." Sellars-Anderson assisted Hurley in handcuffing defendant because he was noncompliant and struggling with Hurley.

The record reflects that "if appellant resisted the officers at all, he did so forcefully, thereby ensuring no reasonable jury could have concluded he violated section 148, subdivision (a)(1) but not section 69." (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 985.)

Based upon the evidence elicited at trial, no reasonable juror would conclude only the lesser but not the greater offense alleged had been committed. Hence, the trial court did not err by failing to instruct the jury with CALCRIM No. 2652.

### The Denial of Defendant's **Romero** *Motion*

Finally, defendant contends the trial court abused its discretion when it denied his request to strike a prior first degree burglary conviction pursuant to *Romero* because his current conviction puts him outside the spirit of the three strikes law. We do not agree and find no abuse of discretion.

Section 1385 authorizes trial courts to strike prior felony conviction allegations in cases brought under the three strikes law if doing so will further the interests of justice. (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529–530.) A request for this type of leniency is commonly referred to as a "*Romero* motion," although defendants do not actually have a right to make motions under section 1385, subdivision (a). (*People v. Carmony* (2004) 33 Cal.4th 367, 375, 379.)

The statutory scheme of the three strikes law "not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.) When presented with a *Romero* motion, the trial court "must consider whether, in light of the nature and

circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) The refusal to strike a prior conviction is reviewed for abuse of discretion, which will only be found in "extraordinary" cases where the trial court's decision "is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, 33 Cal.4th at pp. 377–378.)

At sentencing, after acknowledging it had read the parties' pleadings, the probation report, and the various letters in support, the court made the following comments:

> "All right. The Court has reviewed the Romero motion that has been filed on behalf of [defendant]. And even without the additional information that [the prosecutor] commented on moments ago, I have to follow the existing law and the existing line of cases that refer to the discretion that the court holds in deciding when a candidate is appropriate candidate to be granted the benefits of a Romero motion. A Romero motion is not one that is casually reviewed and casually given because a person wants it or says they should have it. There has to be justification that a person is deserving because of certain guidelines that they have stayed clear of any criminality. That they have reformed. That they have benefited from the services that they have previously been given. That their criminal history is not such where they continue to be a menace in society. That, in fact, the current offense is not one where the Court finds it to be the type that continues to show heightened and continued criminality.

> "As the probation officer at page six of the report indicates that in this particular case [defendant] was physically assaultive towards his girlfriend causing her fear for her life at that time. Then he turned that aggression towards an officer who had been contacted by not one, but more than one—as many as two, possibly even three civilians driving down the street. Generally, civilians are unlikely to get engaged in other people's pedestrian behavior unless it appears to be the kind that was observed by these various civilians on that day. And these calls came in independent of one another. They're not like two or three same group people calling at the same time. Independent people, non-related to either side.

10.

"So the Court cannot in this instance find that [defendant] is a good candidate for a grant of probation. He had been in violation of his prison commitment on the prior occasions. On at least two occasions he was returned to serve out his term. He does not take obvious responsibility for his crimes. And it certainly is disturbing to the Court that during the in-progress portion of this case [defendant] was apparently in communication with the alleged victim in this case. But as I said at the beginning, set aside any of that information, based on his history alone, his current offense, this Court does not find grounds to give him the benefit of Romero. The request for Romero is, therefore, rejected and denied."

In light of defendant's criminal background and the circumstances surrounding the present crimes, there is nothing in the record demonstrating """"articulable reasons which can withstand scrutiny for abuse""""" why defendant should fall outside the three strikes scheme. (*People v. Carmony*, *supra*, 33 Cal.4th at p. 377.) As specifically noted by the trial court, defendant's present offenses involved assaultive behavior toward his girlfriend and aggressive behavior toward Officer Hurley. This, in combination with his prior parole violations, failure to accept responsibility for his actions, and communications with his victim while he was incarcerated—in violation of the emergency protective order—meant defendant was not entitled to the court's exercise of discretion in that regard.

In sum, the court did not abuse its discretion.

## DISPOSITION

The judgment is affirmed.

_____

PEÑA, J.

WE CONCUR:


_____

LEVY, Acting P.J.


_____

DETJEN, J.

11.